\* St. Louis & S. F. R. Co. v. Town of Troy *et al.*

No. 1077.   Opinion Filed March 8. 1910.

(108 Pac. 753.))

RAILROADS—Stopping of Interstate Trains—Reasonableness of Corporation Commission Order. When the evidence reasonably tends to show that a railway company has not provided adequate and reasonable passenger facilities at a certain station, and the Corporation Commission so finds, an order of the commission requiring it to stop another train each day engaged in interstate commerce, when the stopping of such trains will not reasonably prevent the making of their interstate connections or interfere with same, must on appeal be regarded as just, reasonable, and correct.

(Syllabus by the Court.)

*Appeal from the Corporation Commission.*

Proceeding by the Town of Troy and others before the State Corporation Commission to compel the St. Louis & San Francisco Railroad Company to stop an interstate train at a certain station. From an order granting the relief, the railroad appeals. Affirmed.

*W. F. Evans, E. T. Miller,* and *R. A. Kleinschmidt,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Geo. A. Henshaw,* Asst. Atty. Gen., for defendants in error.

KANE, J. The complaint filed in this case prayed that a regular agent be installed to perform all the duties usually performed by station agents, including telegraph service. at the town of Troy, and also alleged that the passenger facilities furnished by the plaintiff in error were inadequate, and prayed for an order requiring trains Nos. 9 and 10, known as the fast trains on appellant's line of road, running from St. Louis to Sherman, Tex., be stopped on flag to perform passenger service. Upon hearing, the commission found that Troy was situated half way between Ravia and Mill Creek, on the line of the defendant, in Johnson county, being about

\*Appealed to the Supreme Court of the United States.

St. Louis & S. F. R. Co. v. Town of Troy *et al.*

six miles from either place; that only one passenger train a day each way stopped there, one being a north-bound local train due between 7 and 8 a. m., and the other a south-bound local, due between 10 and 11 p. m. Upon the hearing the commission issued the following order:

"The complaint alleges inadequate passenger service, and asks that the defendant be required to stop passenger train No. 9, south bound, and No. 10, north-bound, on flag at Troy. Also to require the defendant to maintain an agent who is a telegrapher and to bulletin trains, etc. The commission finds from the evidence that Troy is situated half way between Ravia and Mill Creek, on the line of the defendant, in Johnston county. The commission further finds from the evidence in this case that only one passenger train a day stops at town of Ravia, going south between nine and ten o'clock p. m., and another between eight and nine a. m.; that where more than one passenger train is operated a day over a line of road that at least two trains a day each way should stop and perform passenger service at local stations. The commission is therefore of the opinion that passenger trains Nos. 9 and 10 operated on the defendant's line of road should stop on flag at the town of Troy. As to the other part of this complaint that the defendant should maintain an agent who can bulletin trains it appears from the defendant's testimony that this requirement has already been met, that it now has an agent who sells tickets, looks after freight and bulletins trains. It is therefore ordered that the defendant, the St. Louis & San Francisco Railroad Company, shall on and after the 1st day of October stop passenger trains Nos. 9 and 10 on flag at the town of Troy, and that the defendant bulletin the arrival of trains as is done at other stations."

To reverse this order this proceeding in error was commenced.

The only serious question presented to this court by counsel in their respective briefs is the right of the commission to enter an order stopping these trains. As stated by Mr. Hutchinson, superintendent of the railway company, in his evidence: "We have no objection to the complaint except the stopping of trains." The evidence showed that the town of Troy is a place of about 300 population, with one general store, two small stores. That Ragon is an inland town about four miles from Troy, and about the same size, and would do its railway business at Troy if facilities were improv-

ed. Some cotton and a great many ties are shipped from Troy, and considerable cattle would be shipped from there if the accommodations were adequate for that purpose. That two passenger trains stop there, one the north-bound, due between 7 and 8 o'clock a. m., and the south-bound, due between 10 and 11 o'clock p. m. The trains that stop are local trains. The only through trains the company runs over this line are Nos. 9 and 10, between St. Louis, Mo., and Texas points, via Sherman, Denison, and Ft. Worth; the south-bound being due at Troy at 11:05 a. m., and the north-bound at 2:47 p. m.

We think there is ample evidence tending to establish the inadequacy of the passenger service at the town of Troy; indeed, there is little or no controversy on this question. The contention of counsel for plaintiff in error seems to be that, even if the service is inadequate, the Corporation Commission has no power to make an order requiring these particular trains to stop, because they are through interstate trains. In support of this contention, they call attention to *Mississippi R. Com. v. I. C. R. Co.* 203 U. S. 335, 27 Sup. Ct. 90, 51 L. Ed. 209, and *Atlantic Coast Line R. Co. v. Wharton*, 207 U. S. 328, 28 Sup. Ct., 121, 52 L. Ed. 230. The following quotation from the first of these cases, copied from brief of counsel, probably states their position with as much clearness as possible:

"The order cannot be viewed alone in the light of ordering a stop at one place only which might require only three minutes as asserted. It is a question whether these trains can be stopped at all at any particular station when proper and adequate facilities are otherwise afforded such station. If the commission can order such a train to be stopped at a particular locality under such circumstances, then it could do so as to other localities, and in that way the usefulness of a through train would be ruined, and the train turned from a through to a local one in Mississippi. The Legislature of a state could not itself make such an order, and it cannot delegate the power to a commission to do so in its discretion, when adequate facilities are otherwise furnished. The transportation of passengers on interstate trains as rapidly as can with safety be done is the inexorable demand of the public who use such trains. Competition between great trunk lines is fierce and at times bit-

ter. Each line must do its best even to obtain its fair share of the transportation between states, both of passengers and freight. A wholly unnecessary, even though small, obstacle, ought not in fairness be placed in the way of an interstate road, which may thus be unable to meet the competition of its rivals."

We do not believe the order of the Corporation Commission is out of harmony with the rule laid down in the foregoing decisions. We believe the rule to be that, if proper and adequate passenger facilities are otherwise provided, the Corporation Commission is without power to require interstate trains to stop at any particular station. But the Supreme Court of the United States has sustained orders of Corporation Commissions requiring through fast trains to stop where it was found that the local passenger service was inadequate. The Legislature of the state of Ohio passed a law requiring at least three passenger trains each way to stop at all towns containing a certain population. In the case of *Lake Shore & Michigan So. Ry. Co. v. Ohio,* 173 U. S., 285, 19 Sup. Ct. 465, 43 L. Ed. 702, it was held that this was not an unreasonable requirement, and that, if the railroad company desired to operate through passenger trains, it should operate a number in excess of the three required to stop by the provisions of the law. In the case of *Mississippi R. Com. v. I. C. R. Co., supra,* the court held that a state may, where the facilities for local travel are inadequate, compel a railway company to stop through interstate fast trains. To the same effect are *Cleveland, etc., Ry. Co., v. Illinois,* 177 U. S. 514, 20 Sup. Ct. 722, 44 L. Ed. 868, and *Gladson v. Minnesota,* 166 U. S. 427, 17 Sup. Ct. 627, 41 L. Ed. 1064.

In *M., K. & T. Ry. Co. v. Town of Witcher et al.* (reported in this volume) 106 Pac. 852, it was held that:

"Where a railroad company has not provided adequate and reasonable facilities for the accomodation of local traffic to and from a certain place which is within 11 miles of the county seat, a city of over 30,000 inhabitants, located on the same railroad, an order of the Corporation Commission requiring it to stop at said point another train each way engaged in interstate commerce when the stopping of such trains would not reasonably prevent the making of

their interstate connections, or interfere with same, will not be construed on review in this court as unreasonable."

In the case at bar it has not been shown that the stopping of trains Nos. 9 and 10 on flag would materially interfere with or hamper interstate passenger traffic. At least there is no such showing as will overcome the presumption that must be indulged in by this court that the order appealed from is just and reasonable.

*M., K. & T. Ry. Co. v. Town of Norfolk et al.* (reported in this volume) 107 Pac. 172, is also in point on the proposition now under discussion. In that case, after careful review of the authorities, it was held:

"Where a railroad company has provided adequate and reasonable facilities for the accommodation of traffic to and from a certain place, an order of the Corporation Commission requiring it to stop another train engaged in interstate commerce at said point is unreasonable."

Counsel for plaintiff in error in a supplemental brief contend that the facts in the foregoing case are so similar to the facts in the case at bar that that case ought to be decisive of this. We cannot agree with counsel. While Norfolk and Troy approximate each other in population and general commercial importance, the evidence showed Norfolk to have two railways making practically the same points with trains stopping as follows: North-bound, 1:20 p. m., local freight carrying passengers and freight daily except Sunday, between 12:10 p. m. and 1:10 p. m.; south-bound, 2:25 p. m.; local freight carrying passengers and freight daily except Sundays, 9:55 a. m. These trains stop at all stations. The court held this service to be adequate. In the instant case we believe the evidence reasonably discloses the inadequacy of the passenger facilities furnished the people of the town of Troy and vicinity, and fails to show any material interference with interstate traffic.

It follows that the order of the Corporation Commission ought to be affirmed. It is so ordered.

Dunn, C. J., and Hayes and Turner, JJ., concur; Williams, J., absent and not participating.