CHICAGO, R. I. & P. RY. CO. v. STATE *et al.*

No. 7143.   Opinion Filed May 23, 1916.

(157 Pac. 1039.)

1.   **RAILROADS—Regulation— Connections—"Other Industry."** An oil mill and cotton gin are embraced under the term "other industry" as used in section 33, art. 9, Const., providing special facilities for such industry.

2.   **SAME.** Under section 33, art. 9, Const., whenever the amount of business reasonably to be afforded a railway line by an oil mill and gin plant is sufficient to justify the same, after a switch

or spur track has been constructed from said railroad to said plant at the expense of its owner, said railway company may be required to furnish the switch stand and frog and other necessary material for making connection with such side track or spur and shall make such connection under such reasonable terms, conditions, and regulations as the Corporation Commission may prescribe.

3. **SAME.** The jurisdiction of the commission under this provision to require a switch connection to be made does not rest upon the existence of contractual relations between the parties, nor does it arise by reason of the breach of an alleged contract to construct such switch, but depends upon the existence of a state of facts which bring the case within the terms of said constitutional provision.

4. **CONSTITUTIONAL LAW—Eminent Domain—Due Process of Law—Regulation of Railroad.** Where a private side track or spur is constructed to a railroad from a private industry under section 33, art. 9, Const., and said railroad is required to construct a connection with such side track or spur at the expense of the owner of such industry under reasonable terms, conditions, and regulations prescribed by the Corporation Commission, the requirement that such switch connection be made by the railroad company does not constitute the taking of private property for private use without compensation and without due process of law.

5. **COMMERCE—Means of Regulation—Regulation of Railroads.** Act Cong. June 29, 1906, c. 3591, section 1, 34 Stat. 584 (U. S. Comp. St. 1913, section 8563), amending "An act to regulate commerce" (Act Cong. Feb. 4, 1887, c. 104, section 1), conferring jurisdiction upon the Interstate Commerce Commission to require switch connections to be made with any lateral branch line of railroad or private side track where such connection is reasonably practicable and will furnish sufficient business of an interstate character to justify the same, does not deprive the Corporation Commission of jurisdiction to require switch connection to be made with a private side track or spur under section 33, art. 9, where the business of an intrastate character is sufficient to warrant the making of such an order.

(Syllabus by the Court.)

*Appeal from Corporation Commission.*

Proceeding by the State and another against the Chicago, Rock Island & Pacific Railway Company before the Corporation Commission. From a decision for the petitioners, the railway appeals. Reversed.

*C. O. Blake,* for appellant.

*S. P. Freeling,* Atty. Gen., and *Logan & Rakestraw,* for appellees.

HARDY, J. This proceeding was commenced before the Corporation Commission seeking an order requiring the appellant to construct and maintain a siding or spur track along its right of way adjacent to the plant of Baker Cotton Oil Company for sufficient length to serve its plant, without cost to complainant. Hearing was had and testimony taken, and the commission made its final order No. 835, which is as follows:

"It is therefore ordered that immediately upon the said W. U. Baker having completed the grading necessary to be done for said side track sufficient to serve his mill and having deposited sufficient money in the bank to cover the cost of labor and material for the completion of said track with irrevocable instructions to the bank that such money be paid to the Chicago, Rock Island & Pacific Railway Company upon completion of the said track, that the Chicago, Rock Island & Pacific Railway Company begin construction and complete said track within twenty days after the beginning of such construction."

The railway company feeling itself aggrieved, filed motion for new trial, which was overruled, and it prosecutes an appeal. The complainant offered evidence to show that some time prior to the institution of this proceeding it had entered into an agreement with the appellant by which it was agreed that complainant might erect its plant near the right of way of appellant, and that upon the payment of a certain sum of money appellant agreed to construct a side track to complainant's plant; that thereupon complainant began the construction of said plant and expended a large sum of money; that appellant, within about 30 days from the making of said

agreement, refused to comply therewith. Evidence was taken as to the amount of business done by complainant's plant and the probable business which appellant would receive therefrom.

The jurisdiction of the Corporation Commission to make the order is challenged. While it is seen by an examination of the original complaint filed before the commission that it was sought to compel appellant to construct and maintain a siding or spur track without cost to the complainant, the jurisdiction of the commission was not dependent on the allegations of said complaint, the test being not the relief which was sought, but that which was in fact granted, there being no showing that appellant was surprised or misled. *St. L. & S. F. R. Co. v. Miller,* 31 Okla. 801, 123 Pac. 1047.

It is conceded that an oil mill and a cotton gin are industries within the meaning of section 33 of article 9, authorizing any person owning such industry located near or within a reasonable distance of any railroad to construct and keep in repair a switch leading therefrom to such railroad. *St. L. & S. F. R. Co. v. Zalondek,* 28 Okla. 746, 115 Pac. 867.

Section 33, art. 9, of the Constitution, under which the order in question was made, is as follows:

"Any person, firm, or corporation owning or operating any coal, lead, iron, or zinc mine, or any sawmill, grain elevator, or other industry, whenever the commission shall reasonably determine that the amount of business is sufficient to justify the same near or within a reasonable disttance of any track, may, at the expense of such person, firms or corporation, build and keep in repair a switch leading from such railroad to such mine, sawmill, elevator or other industry; such railroad company shall be required to furnish the switch stand and

frog and other necessary material for making connection with such side track or spur under such reasonable terms, conditions and regulations as the said commission may prescribe, and shall make connections therewith. The party owning such mine, sawmill, elevator or other industry shall pay the actual cost thereof.    *    *    *"

The authority conferred by this section is that the railroad company may be required to furnish the switch stand and frog and other necessary material for making connections with such side track or spur under such reasonable terms, conditions, and regulations as the said commission may prescribe, and shall make connection therewith. This duty is imposed upon the contingency that the owner of such mine, sawmill, elevator, or other industry shall construct at his own expense a switch or spur leading to such mine, sawmill, elevator or other industry from such railroad.

In *St. L. & S. F. R. Co. v. Zalondek, supra,* the third paragraph of the syllabus is as follows:

"Whenever the amount of business reasonably to be afforded a railway line by a gin plant is sufficient, after a switch or spur track has been constructed from said railroad to such plant at the expense of its owner, to justify the same, said railway company may be required to furnish switch stand and frog and other necessary material for making connections with such side track or spur under such reasonable terms, conditions and regulations as the Corporation Commission may prescribe."

It is admitted that complainant had constructed no switch or spur from its plant to the railroad, and was not ready to construct such switch or spur, and was not willing that one should be constructed upon its premises. The contention is made that because the complainant's plant is located within two or three feet of appellant's

right of way, the commission is vested with jurisdiction and authority to require the appellant to construct a switch or spur to said plant upon the conditions prescribed in the order; that is, that complainant shall do all necessary grading and shall deposit a sufficient sum of money in the bank to cover the cost thereof with irrevocable instructions that said money be paid to appellant. The order directs the building of said switch after complainant shall have done all necessary grading, and authorizes complainant to enter upon the right of way and complete the necessary grading, upon which appellant is required to construct said switch after the cost thereof has been deposited in the bank. If the commission has authority to direct appellant to construct said switch beyond its right of way, the distance of two or three feet intervening between said right of way and complainant's plant, then it would possess authority to direct the construction of such a switch a distance of ten feet beyond the right of way or 50 feet or any distance which it might deem reasonable. The power of the commission as defined in this section is such that when the owner of any industry therein enumerated shall construct at the expense of such owner a switch leading from the railroad to such industry, it may require such railroad to furnish the switch stand and frog and other necessary material for making connection with such side track and to make such connection, and the party owning such industry is required to pay the actual cost thereof.

The authority thus conferred on the commission is very similar to that conferred upon the Interstate Commerce Commission by section 1 of the act of Congress entitled "An act to regulate commerce," as amended June

29, 1906, c. 3591, 34 Stat. at Large, p. 584, which is as follows:

"Any common carrier subject to the provisions of this act, upon application of any lateral branch line of railroad, or of any shipper tendering interstate traffic for transportation, shall construct, maintain, and operate upon reasonable terms a switch connection with any such lateral branch line of railroad, or private side track which may be constructed to connect with its railroad, where such connection is reasonably practicable and can be put in with safety and will furnish sufficient business to justify the construction and maintenance of the same; and shall furnish cars for the movement of such traffic to the best of its ability without discrimination in favor of or against any such shipper. * * *" (U. S. Comp. St. 1913, sec. 2563).

And jurisdiction is conferred upon the Interstate Commerce Commission, in the event any carrier shall fail to install and operate any such switch or connection upon application in writing by any shipper, to hear and investigate the same and determine as to the safety and practicability thereof and justification and reasonable compensation therefor, and to make an order directing such carrier to make such connection. In considering the extent of authority conferred upon it by this section, the Interstate Commerce Commission, in *Winters Metallic Paint Co. v. C., M. & St. P. Ry. Co.*, 16 Interst. Com. Com'n, 587, said:

"By section 1 of the amended act to regulate commerce the commission is authorized to order the construction and maintenance, upon reasonable terms, of 'a switch connection' with any lateral branch line of railroad or 'private side track which may be constructed to connect with its railroad, where such connection is reasonably practicable and can be put in with safety and will furnish

sufficient business to justify the construction and main-
tenance of the same.' From the language of this section
it is clear that the commission has no authority to order
the construction of a private side track by a railroad
company, but that its authority is limited to ordering a
carrier to make 'a switch connection' with a private side
track. Certainly our authority . does not embrace the
power to order a carrier to construct and maintain a side
track off its right of way and without direct contribution
by the shipper to the expense incident thereto."

The question was again considered by the commission
in *Ralston Townsite Co. v. Mo. Pac. Ry. Co.*, 22 Interst.
Com. Com'n, 354, where the commission said:

"Congress intended to provide a method whereby a
lateral branch line of railroad, or a shipper tendering
interstate traffic for transportation originating upon a
private side track, may compel a carrier to install and
operate a switch connection with said lateral railroad or
private side track when the same has been constructed
in such manner that a connection is practicable and can
be made with safety, and is justified from a business
standpoint. * * * * Complainants seemingly have
failed to distinguish between the physical characteristics,
of a switch connection, which the commission can re-
quire in a proper case under the authority conferred by
the first section, and a private side track, which the com-
mission cannot require a carrier to construct."

This provision of the act of Congress was construed
by the Supreme Court in *Interstate Commerce Commis-
sion v. Delaware, Lackawanna & Western R. R. Co.*, 216
U. S. 531, 30 Sup. Ct. 415, 54 L. Ed. 605, and the extent
of the right created by that act was declared as follows:

"The statute creates a new right not existing out-
side of it. *Wisconsin, M. & P. R. Co. v. Jacobson*, 179 U.
S. 287, 296, 21 Sup. Ct. 115,. 45 L. Ed. 194, 199. It is
plain from the provisions of the act, the history of the

amendments and justice, that the object was not to give a roving commission to every road that might see fit to make a descent upon a main line, but primarily, at least, to provide for shippers seeking an outlet either by a private road or a branch."

These decisions settle the proposition that the extent of the authority conferred and the right thus created is to require a connection upon the complaint of a shipper seeking an outlet, either by a private road or a branch, and not to require the construction of a private side track.

The similarity of the provisions of the act of Congress with section 33 of article 9 is apparent at a glance. The authority conferred upon the Corporation Commission by section 33 of article 9 is such that, when the owner of any industry near or within a reasonable distance of any track at his own expense has constructed a switch leading from such railroad to such industry, the Corporation Commission may require such railroad to furnish the switch stand and frog and other necessary material for making connection with such side track or spur under such reasonable terms, conditions, and regulations as the commission may prescribe, while the grant of power to the Interstate Commerce Commission under the act of Congress, *supra,* is to require any common carrier to construct and maintain and operate upon reasonable terms a switch connection with any lateral branch line of railroad or private side track which may be constructed to connect with said railroad, where such connection is reasonably practicable and can be put in with safety and will furnish sufficient business to justify the construction and maintenance of the same. The extent of authority conferred in each instance is practically identical. The

authority conferred upon the Interstate Commerce Commission is not that to require the construction of a private side track by a railroad company, but is limited to ordering a carrier to make a switch connection with a private side track. We can see no difference between the authority thus conferred and that granted by section 33 of article 9 of the Constitution. It follows, therefore, that the Corporation Commission is without authority to direct the construction of a private side track, but the authority conferred by this section is limited to that of requiring a railroad or other common carrier to build a connection with any private side track or spur that may be constructed by the owner of an industry in accordance with said section.

The jurisdiction of the commission under this provision to require a switch connection to be made is not founded upon any contractual relation between the parties, nor does it arise by reason of the alleged breach of a contract to construct such switch, but it depends upon the existence of a state of facts which brings the case within the terms of said constitutional provision. Any claim for specific performance or for damages for breach of such contract is outside the jurisdiction of the commission, and relief of this character must be sought in the courts. *Ralston Townsite Co. v. M. P. Ry. Co., supra.*

It is claimed by appellant that the order requiring it to construct a switch is unconstitutional and void because in conflict with the Constitution of the United States in that it takes private property for a private use without compensation and without due process of law. The appellant was notified upon the institution of this proceeding as required by subdivision 3, sec. 18, art. 9,

Constitution, and appeared and contested the granting of said order and offered testimony in opposition thereto.

In *Mo. Pac. Ry. Co. v. Nebraska,* 217 U. S. 196, 30 Sup. Ct. 461, 54 L. Ed. 727, 18 Ann. Cas. 989, the Supreme Court of the State of Nebraska had affirmed a judgment of the district court in that state imposing a fine on the railway company for refusing to construct and maintain at its own expense a side track or switch necessary to reach a grain elevator erected adjacent to its right of way, and the order was held invalid because it constituted a taking of the property of the railway company without due process of law. In passing upon the case, the Supreme Court said:

"It will have been noticed that there is no provision in the statute for compensation to the railroad for its outlay in building and maintaining the side tracks required."

The statute in that case was held to be invalid because it was universal in its terms and on its face appeared to require the railroad company to pay for side tracks whether reasonable or not, and it was further said in the discussion of the case that even if the statute could be so construed as to require the building of such side track at the expense of the railroad when reasonable, no such obligation was incident to their public duty, and the attempt to impose it was beyond the limits of the police power, and if the statutes were construed only to require a side track when the demand was reasonable, that the railroad ought at least be allowed a hearing in order to determine whether the demand was within the act. The authority, however, of the Interstate Commerce Commission to require a carrier to make connections with a lateral branch line of railroad or private side track is

expressly conferred by section 1 of the act to regulate commerce, as amended June 29, 1906, and is upheld in the decisions cited, *supra,* and an order made thereunder and in accordance therewith constitutes due process of law, and is not a taking of property for a private use without compensation.

Section 33 of article 9 requires the actual cost of such connection to be paid by the party owning the side track or spur with which such connection is made, and it is specifically declared that such connection shall be made under such reasonable terms, conditions, and regulations as the commisison may prescribe. Construing this provision, this court, in *St. L. & S. F. R. Co. v. Zalondek et al.,* 28 Okla. 746, 115 Pac. 867, said:

"Obviously it was intended for the railroad company to retain the ownership and control of such switch stands and frogs and other necessary material for making connection with such side tracks or spurs. Reasonable terms, conditions, and regulations as to the use and operation of the same by the railway company are to be prescribed by the commission so that the railway company shall receive a just compensation therefor."

Clearly the constitutional provision under which the order was made is not subject to the objections that rendered the Nebraska statute invalid, and an order, duly made by the commission after notice to the railroad and an opportunity to be heard, which requires connection with a private side track or spur and requires the actual cost thereof to be paid by the owner of such side track or spur, is not a taking of property without due process of law. Conceding the position of the railroad that its right of way is private property, complainant would have no right to enter thereon for the purpose of constructing a

side track or making connections with a switch or spur, and, should it do so, it would be a trespasser. The grant of power to the commission means either that the company may be required under the conditions therein prescribed to make connections with a side track or spur, or that the owner of such industry who has constructed a side track or spur may enter upon the right of way and make such connections. If neither of these propositions be true, it simply means that no connection with any private track or spur can be had against the will of the railroad company. The meaning of this language appears clear that where such side track or spur has been constructed by the owner of such industry, the railroad company shall be required to furnish the switch stand and frog and other necessary materials for making connections with such side track or spur, that is, in addition to furnishing the switch stand and frog, the company shall be required to furnish sufficient material to connect said side track or spur with its own track, and shall make such connection, the actual cost of which shall be paid by the owner of such industry. The railroad retains the ownership of the switch stand and frog and other material used in making such connection, and also of its right of way, and the use and operation thereof by the railroad company is to be under such reasonable terms, conditions, and regulations as the commission may prescribe.

Appellant insists that exclusive jurisdiction in the premises was vested by law in the Interstate Commerce Commisison, and it is urged that there can be no divided authority over interstate commerce, and that the regulations of Congress on that subject are supreme, and supersede any regulations imposed by virtue of state authority. This principle is undoubtedly correct and its correctness

is conceded, but it is said in answer thereto that the evidence is such as to warrant the exercise of jurisdiction by the Corporation Commission. It is shown that complainant owns four gin plants located respectively at Cordell, Sentinel, Roosevelt, and Hobart, within this state; that the capacity of its mill at Hobart is 3,000 tons of seed per year, and from 1,000 to 2,000 bales of cotton; that from September 1, 1913, to March, 1914, 600 tons of cotton seed were shipped into the plant, and 800 tons of cake were shipped out. In addition three cars of fuel oil, two cars of bagging and ties were shipped into the plant, and two cars (150 bales) of linters were shipped out of the plant. The oil manufactured by it went to northern points, and most of the cake was shipped to Kansas, Nebraska, and Iowa. Where the cotton seed came from does not appear, but the commission was justified in entertaining the view that it was shipped from the gin plants of complainant within the state. It thus appears that the business which would accrue to appellant by reason of connection with complainant's plant would consist of both interstate and intrastate shipments, and the finding of the commission as to the amount of business being sufficient to justify the construction of switch connections is not questioned; the point urged being that exclusive jurisdiction is vested in the Interstate Commerce Commission under section 1, Act Cong. June 29, 1906.

In *Wisconsin, Minnesota & Pacific Railroad Company v. Jacobson*, 179 U. S. 287, 21 Sup. Ct. 115, 45 L. Ed. 194, was involved a question similar to that here presented. Under a statute of the State of Minnesota the railroad commission had ordered certain railroads to provide at the point of intersection of such roads, at Hanley Falls, ample facilities by track connections for trans-

ferring any and all cars in the regular business of their respective lines or roads from the lines or track of one of said companies to those of the other, and to provide equal and reasonable facilities for the interchange of cars and traffic between their respective lines, and for receiving, forwarding, and delivering property and cars to and from their respective lines. In passing upon the case the Supreme Court said:

"The judgment of this case, however, neither regulates nor interferes with that commerce, nor does that part of the statute upon which the judgment is founded. * * * To provide at the place of intersection of these two railroads, at Hanley Falls, ample facilities by track connections for transferring any and all cars used in the regular business of the respective lines of road from the lines or tracks of one of said companies to those of the other, and to provide at such place of intersection equal and reasonable facilities for the interchange of cars and traffic between their respective lines, and for the receiving, forwarding and delivering of property and cars to and from their respective lines, as provided for by this judgment, would plainly afford facilities to interstate commerce, if there were any, and would in no wise regulate such commerce within the meaning of the Constitution. That is all that has been done by the judgment under review. A state may furnish such facilities or direct them to be furnished by persons or corporations within its limits without violating the federal Constitution."

The jurisdiction of the Interstate Commerce Commission, upon an application by a shipper, to require the construction of connections with a private side track is made to depend upon the fact that the shipper demanding such connections will tender interstate traffic for transportation, and the grant of jurisdiction thus conferred was not intended to and does not defeat the jurisdiction of the

state authorities in cases where the traffic tendered for transportation is of an intrastate character.

The evidence justified the commission in finding that there was sufficient business of an intrastate character to require the construction of such side track by the appellant, and the jurisdiction of the Corporation Commission to require switch connections to be made is not affected by the fact that a portion of the business tendered to the railroad company would be of an interstate nature. If such were the case, the state authorities would be without jurisdiction in any matter where interstate commerce might incidentally be affected, and the commission would be without authority to require the erection of a depot, freight house, or a platform, or to require a switch connection with a private side track or spur, or to regulate rates and charges for purely intrastate matters. The cases in this court sustaining orders of this character are too numerous to cite. In fact, it is hardly possible to conceive of any order which might be made by the commission affecting a railroad operating an interstate line of railroad in which interstate commerce would not in some way be affected.

Other questions are presented, but inasmuch as the order was in excess of the authority of the Corporation Commission, the other questions become immaterial, and will not now be considered.

For the foregoing reasons, the order appealed from is reversed.

All the Justices concur, except THACKER, J., absent.