# CHARLESTON.

## CHESAPEAKE & OHIO RAILWAY CO. v. PUBLIC SERVICE COMMISSION.

### Submitted May 26, 1916.    Decided June 3, 1916.

1. RAILROADS—*Accommodations—Carriage of Passengers.*

An order, made by the public service commission, commanding the Chesapeake & Ohio Railway Company to attach to its train No. 34, scheduled to leave Huntington daily at 7:45 A. M., and transport to Charleston a car, denominated the Wheeling Sleeper, carried to Huntington by the Ohio River Division of the Baltimore & Ohio Railroad, and to return the same to Huntington on the same day, by means of its train No. 33, scheduled to leave Charleston at 7:15 P. M. and arrive at Huntington at 9:00 P. M., is held to impose an unreasonable and unnecessary burden upon said company, in view of facilities already furnished by its trains, Nos. 33 and 34, and unjust and unfair to the carrier, because of the unnecessary burden imposed upon it and the pecuniary loss incurred by it in performing the extra service.    (p. 668).

2. SAME.

But that performance of the extra service will cause a pecuniary loss to the carrier, is not alone sufficient to prove it to be confiscatory. In order to determine that question petitioner's entire intrastate earnings, from its passenger traffic, must be taken into account.    (p. 670).

3. COMMERCE—*Interstate Commerce—Burden Upon.*

Nor is such order necessarily repugnant to the Constitution and statutes of the United States, as imposing an undue burden upon interstate traffic. The states are permitted to make reasonable regulations, affecting interstate carriers, relating to the stopping of trains at populous towns, for the purpose of taking on and

78 W. Va.

letting off passengers, and respecting the changing of schedules of trains, so as to connect with trains running on other railroads, for the accommodation of the public.  (p. 672).

(MILLER, JUDGE, dissenting).

Petition by the Chesapeake & Ohio Railway Company for the suspension of an order of the Public Service Commission.

*Order of suspension granted.*

*Enslow, Fitzpatrick & Baker,* for petitioner.

*S. B. Avis,* for respondent.

WILLIAMS, PRESIDENT:

The Chesapeake & Ohio Railway Company has petitioned this court to suspend the following order, made by the public service commission on the 31st day of March, 1916, after an investigation of the matter had upon its own motion:

"*Ordered,* That the Chesapeake & Ohio Railway Company be and it is hereby required to receive from the Baltimore & Ohio Railroad Company at Huntington, and there attach to its passenger train No. 34, scheduled to leave Huntington at 7:45 in the morning, and transport to the City of Charleston, the Pullman sleeping car moving over the tracks of the Ohio River division of the Baltimore & Ohio Railroad Company from Wheeling to Huntington, commonly known as the Wheeling sleeper; and that said sleeping car can be detached from said train at Charleston, and be returned to Huntington on train No. 33 of said Chesapeake & Ohio Railway Co., scheduled to leave Charleston at 7:15 in the evening, and be delivered to the Baltimore & Ohio Railroad Company at Huntington; and that the said Chesapeake & Ohio Railway Company shall begin said service on or before the fifteenth day of April, 1916."

It is insisted that this order should be suspended for the following reasons: (1) Because the public service commission erroneously applied the law. (2) Because the effect of the order is confiscatory. (3) Because it imposes an undue burden upon interstate commerce.

Has the public service commission misapplied the law? is

·the first question to be determined. The law governing the case is section 4, chapter 8, Acts 1915, amending and re-enacting certain sections of chapter 9 of the Acts of 1913, and adding thereto certain additional sections, and reads as follows:

"Every person, firm or corporation engaged in a public service business in this state shall establish and maintain adequate and suitable facilities, safety appliances or other suitable devices, and shall perform such service in respect thereto as shall be reasonable, safe and sufficient for the security and convenience of the public, and the safety and comfort of its employes, and in all respects just and fair, and without any unjust discrimination or preference. All charges, tolls, fares and rates shall be just and reasonable, and no change shall be made in any tariffs, rates, joint rates, fares, tolls, schedules or classifications in force at the time this act takes effect, except as hereinafter provided. Every railroad company shall permit switch connections for intra-state business to be made with its tracks at suitable and safe points, by other carriers or shippers, upon such terms and conditions as the commission may prescribe, whenever the business to be offered by the connecting company or shipper, in the judgment of the commission, justifies it. Every railroad and other transportation company may be required by the commission to establish and maintain such suitable public service facilities and conveniences as may be reasonable and just; to make reasonable connection with trains on branch lines of such railroads and with all connecting railroad lines; to require any passenger train to stop at junctions or intersections with other railroads; and may prescribe the number of men required to constitute safe crews for the handling of trains on any steam railroad in this state or any division of any such railroad. No steam railroad shall discontinue any regular passenger train, or other public service facility, or change any regular passenger train schedule or time table, without first obtaining authority from the commission so to do."

In view of the character of the facilities which petitioner is already furnishing to the traveling public, between the cities of Huntington and Charleston, cities fifty miles distant from each other, and containing populations of approximately thir-

ty-five thousand each, and the further fact, proven and not denied by any witness, that the cost of shifting the sleeper from the Ohio River Railroad to the petitioner's track at Huntington and transporting it to Charleston and return, is largely in excess of petitioner's earnings, from that particular service, is the order requiring it to perform the service "reasonable and in all respects just and fair?" While the obligation, imposed by petitioner's charter and the character of its business, is to furnish to the public reasonably safe and convenient facilities for travel, it would be unreasonable to require it to do more, and it would certainly be unjust and unfair, if the performance of the unnecessary additional service caused it to suffer pecuniary loss. It is true that, if the additional facilities are within the scope of the carrier's undertaking, the matter of loss to it in supplying them is not alone determinative of the question of reasonableness, yet it is a thing to be considered. *Atlantic Coast Line* v. *North Carolina Corp. Com.*, 206 U. S. 1; *Chicago, B. & Q. Ry.* v. *Wisconsin Railroad Commission*, 237 U. S. 220; and *C. & O. Ry. Co.* v. *Public Service Commission*, 75 W. Va. 100. And if the additional facility required is not one of the carrier's absolute duties, then the matter of expense is of controlling importance. *Oregon R. R. & N. Co.* v. *Fairchild*, 224 U. S. 510.

Petitioner's train No. 34 is made up at Ashland, Kentucky, arrives at Huntington in the morning and leaves there for Charleston and points east, at 7:45 A. M., arriving at Charleston at 9:10 A. M.; and its train No. 33, which is required to return the sleeper to Huntington, leaves Charleston at 7:15 in the evening and arrives at Huntington at 9:00 P. M. It thus appears that, during the time petitioner is required to carry the sleeper people do not generally sleep, and hence do not need a sleeper. They do not usually retire before nine o'clock in the evening, and seven o'clock in the morning is not an unreasonable hour to get up. And while passengers traveling to and from Charleston and Wheeling, and other points along the Ohio River Railroad, who use the sleeper between Wheeling and Huntington, suffer some inconvenience in transferring from the depot of one railroad to the other, in the city of Huntington, such inconvenience is trivial and in-

significant in comparison with the pecuniary loss to petitioner in handling the sleeper. A transfer company operates busses in Huntington, between the two depots, which are not more than one-half mile apart, and in the sale of tickets to Wheeling or to Charleston, via Huntington, both railroad companies provide for the transfer of passengers from one depot to the other, so that they are put to no serious inconvenience and no additional expense.

The terms "convenient and adequate facilities" are not susceptible of exact definition, they are relative terms, and must be interpreted in the light of the conditions existing at the time of their application, and the habits and customs then prevailing. Facilities for traveling, which might have been considered entirely adequate and convenient fifty years ago, would certainly not be so regarded now. The introduction and general use, by railroad companies, of parlor cars, sleeping cars, dining cars and vestibule trains, have made a public necessity of what would formerly have been considered a great luxury. But a sleeping car, for the accommodation of travelers by day, can scarcely be regarded as a reasonably necessary facility for their accommodation; provided some other facility of equal convenience is supplied in its stead. Petitioner's trains, Nos. 33 and 34, carry buffet cars which, for travel by day, are equally as convenient and luxurious as sleeping cars; and it is shown that they supply all the facility and convenience reasonably necessary, for all travelers who would otherwise use the sleeper. Consequently we must interpret the order, not as imposing upon petitioner a duty which is reasonably necessary for the convenience of the public, but as requiring it to supply an unnecessary luxury, at a pecuniary loss to it which, when compared with the benefit to the public from the additional service imposed, is unfair and unjust.

Answering petitioner's second point, it does not appear that the public service commission's order amounts to a confiscation of its property. That the additional service may not be remunerative within itself, is not the sole test of confiscation in such cases, all of the carrier's intrastate earnings from passenger traffic must be taken into account in determining

that question, and it does not appear that such earnings do not produce a fair and reasonable profit to petitioner. In support of this proposition, see authorities above cited.

·· Replying to its third proposition, the order does not necessarily impose an undue burden upon · interstate commerce, there being no congressional legislation or rule of the Interstate Commerce Commission fixing a schedule for the running of petitioner's trains Nos. 33 and 34. The states are permitted to make reasonable rules concerning the stopping of interstate trains, for the purpose of taking on and letting off passengers, and also respecting the change of schedules, in order to make connection with trains running on other railroads, for public convenience, when such requirement does not interfere with some federal statute, or rule of the Interstate Commerce Commission. *Lake Shore & Michigan Southern R. R. v. Ohio,* 173 U. S. 285; and *Atlantic Coast Line R. R. v. North Carolina Corporation Commission,* 206 U. S. 1. We do not think the order imposes an unreasonable burden upon interstate traffic. Our decision to suspend the order rests solely on petitioner's first proposition, that the service it imposes, in view of the established facts, is not such as is reasonably necessary, and, because of the unnecessary burden and pecuniary loss which it imposes upon petitioner, is unjust and unfair to it.

*Order of suspension granted.*