## ATCHISON, T. & S. F. RY. CO. et al. v. STATE et al.

No. 8752—Opinion Filed Nov. 19, 1918.

(176 Pac. 393.)

(Syllabus.)

### 1. Commerce — Regulating Carriers — Pullman Cars.

The Corporation Commission is vested with authority to require all reasonable and proper facilities to be furnished by a railroad company, such as Pullman cars, and the fact that an order of the commission requiring such facilities may incidentally affect interstate commerce does not render the order a nullity; but where a railroad company has furnished all proper and reasonable facilities of the character required by the order, the commission has not the power to require the furnishing of additional facilities, where its order will interfere with interstate commerce.

### 2. Railroads — Reasonable and Adequate Facilities.

What is or is not reasonable and adequate facilities or service to be furnished by a railroad company must be determined in the light of conditions existing at the time and in relation to all surrounding circumstances.

### 2. Same—Pullman Service—Order for Additional Service—Reasonableness.

Where reasonable and adequate Pullman service has been furnished by a railroad company to accommodate all intrastate traffic between two points within this state, an order which requires additional Pullman service between said points is unreasonable, when such additional service can only be furnished at a loss to the railroad company.

### 4. Same.

The order in the instant case held to be unreasonable under the circumstances.

Appeal from the Corporation Commission.

Proceeding by the State of Oklahoma and others against the Atchison, Topeka & Santa Fe Railway Company and the Gulf, Colorado & Santa Fe Railway Company. From an order of the Corporation Commission, requiring them to operate a Pullman car between certain stations on certain trains to determine whether the revenue therefrom would be remunerative, the respondents appeal. Order reversed.

J. R. Cottingham and S. W. Hayes, for appellants.

Paul Walker, for defendants in error.

HARDY, J. Appellants own a line of railway extending through the state between Oklahoma City and Ardmore, and to points outside of the state, both north and south, over which it operates three passenger trains per day, two of which both north and south bound, pass through the points named during the daytime. One train, hereinafter referred to as No. 405, leaves Oklahoma City for the south at 12:01 at night, and one north-bound train, referred to as No. 406, arrives at Ardmore at 12:30 at night. No. 405 carries regularly, between Oklahoma City and Ardmore, and to points beyond in the state of Texas, terminating at Cleburne, Texas, two Pullman cars, one of which is known as the Chicago-Cleburne Pullman, carried for the purpose of accommodating passengers between the two points and intervening points. The second is operated from Oklahoma City to Cleburne, and is known as the Oklahoma City-Cleburne car. This latter Pullman is picked up by train No. 405 at Oklahoma City, and a like Pullman is carried by train No. 406 from Cleburne to Oklahoma City, arriving at Ardmore at 12:30 a. m. and at Oklahoma City at 4:21 a. m., where it is set out. Persons taking passage on train No. 405 at Oklahoma City may enter the Pullman at 9 o'clock p. m., and desiring to disembark at Ardmore are required to get up at 3:58 a. m. Passengers coming from Ardmore to Oklahoma City can embark on the Pullman at 12:30 a. m., and remain therein until 7 o'clock a. m., after arrival at Oklahoma City.

A number of residents of the various towns on the St. Louis & San Francisco Railway Company, between Ardmore and Hugo, and a number of citizens in the city of Ard-

more, filed a complaint with the Corporation Commission, wherein they sought to procure an order requiring an extra Pullman to be attached to train No. 405 and carried to Ardmore, and set out to be picked up by the St. Louis & San Francisco passenger train, and carried over that line to Hugo, and for a Pullman to be attached to the train of the St. Louis & San Francisco Railway Company leaving Hugo in the afternoon and arriving at Ardmore about 8 o'clock at night, to be picked up by train No. 406 of appellants and carried to Oklahoma City and there set out. The evidence in support of the complaint is all by residents of towns along the line of the St. Louis & San Francisco Railway Company, and is largely based upon complaints that the passenger trains of the St. Louis & San Francisco Railway Company do not carry sufficient coaches to accommodate the passengers traveling over that road, and that the Pullman car would furnish additional accommodations for said passengers. There were two hearings upon this complaint, the first hearing being continued to permit representatives of Ardmore to testify, but no witness from Ardmore testified to any necessity or demand for extra Pullman service. The commission ordered appellants to operate a Pullman car between Ardmore and Oklahoma City upon trains Nos. 405 and 406 until the 10th day of January, 1917, to determine whether the revenue from the operation thereof was remunerative, from which order appellants prosecute this appeal.

This order can be complied with only in one of two ways, either by stopping one of the through interstate cars now operated on their trains, or by · attaching an additional Pullman to each of these two trains. The evidence conclusively shows that Pullman accommodations between Oklahoma City and Ardmore have at all times been adequate. Indeed, it appears that for a period of six months or more, about the first of the year 1916, vacant berths, both upper and lower, might be had at all times on any of the Pullmans operated on trains Nos. 405 and 406, between the two points, and no witness had testified that he ever applied for a berth and failed to obtain one. One witness testified that at one time he and a number of other persons applied for accommodations at Ardmore, and that four or five of them rode in the chair car. He does not say whether they did not obtain such accommodations, or whether they applied for lower berths and failed to get them, and refused to take upper berths. It also appears that during a long period of time the number of interstate passengers accommodated by the Oklahoma City-Cleburne car exceeded the number of intrastate passengers from 50 to 100 per cent. If the Oklahoma City-Cleburne car be operated only between Oklahoma City and Ardmore, all interstate passengers on train No. 406, who could not be accommodated on the Chicago-Cleburne car, would be required to arise at Oklahoma City at 4:21 a. m., and all passengers from Oklahoma City to Texas points, embarking upon train No. 405, could not get to bed until the arrival of the train at Oklahoma City at 11:50 p. m. This would result in the same inconvenience to a much larger interstate traffic which this car accommodates than now exists as to intrastate traffic. In addition, the evidence satisfactorily shows that the traffic now taken care of by the Chicago-Cleburne car could not be taken care of by the Chicago-Cleburne car, if the other was discontinued or required to be set out at Ardmore.

The Corporation Commission is vested with authority to require all reasonable and proper facilities to be furnished by a railroad company, such as Pullman service, and the fact that an order of the commission requiring such facilities may incidentally affect interstate commerce does not render the order a nullity. C., R. I. & P. Ry. Co. v. State, 53 Okla. 712, 157 Pac. 1039, L. R. A. 1916F, 1281. But where a railroad company has furnished all proper and reasonable facilities of the character involved, the commission has not the power to require the furnishing of additional facilities, where its order would operate to interfere with interstate commerce; and if the order in the present case be construed to require the setting out at Ardmore of the Oklahoma City-Cleburne car, the order would be an unwarranted interference with interstate commerce. M. K. & T. Ry. v. Town of Norfolk, 25 Okla. 325, 17 Pac. 172, 29 L. R. A. (N. S.) 159; St. Louis & S. F. R. Co. v. Town of Troy, 25 Okla. 749, 108 Pac. 753; St. Louis & S. F. Ry. Co. v. Reynolds, 26 Okla. 804, 110 Pac. 668, 138 Am. St. Rep. 1003; Herndon et al. v. C., R. I. & P. Ry. Co., 218 U. S. 135, 30 Sup. Ct. 633, 54 L. Ed. 970; Ill. Central R. R. Co. v. De Fuentes et al., 236 U. S. 157, 35 Sup. Ct. 275, 59 L. Ed. 517; Chicago, B. & Q. R. R. Co. v. R. R. Commission, 237 U. S. 220, 35 Sup. Ct. 560, 59 L. Ed. 926.

The Corporation Commission is vested with power, under section 18, art. 9, of the Constitution, to require all public service corporations to establish and maintain all such

facilities and conveniences as may be reasonable and just. The term "reasonable and just," or "reasonable and adequate," when applied to facilities or service required of public service corporations, is not capable of exact definition; but the terms are relative, and must be interpreted in the light of conditions existing at the time and in relation to all the surrounding circumstances. M., K. & T. Ry. Co. v. Town of Norfolk, supra; M., K. & T. Ry. Co. v. Wicher, 25 Okla. 586, 106 Pac. 852. There is no necessity shown for any additional Pullman between these points to take care of the intrastate traffic; but, on the other hand, the evidence overwhelmingly establishes that on every train between Oklahoma City and Ardmore Pullman service is furnished to supply and furnish every applicant with accommodations. Where service is desired, as stated by witnesses, is that passengers coming over the line of the St. Louis & San Francisco Railroad to Ardmore will be allowed to go to bed early if the Pullman originates at Ardmore, and will be permitted to sleep as late as 7 o'clock at Oklahoma City, and when returning from Oklahoma City will not be required to disembark at 3:15 at Ardmore.

The order here is very similar to that reviewed in Public Service Commission v. Chesapeake & Ohio Railway Co., P. U. R. 1916E, 353. An order had been made to require the railroad company to transfer at Huntington a Pullman known as the "Wheeling sleeper," operated by the Baltimore & Ohio Railway between Wheeling and Huntington, to a train of the Chesapeake & Ohio Railway Company, and carry the same into Charleston. The Chesapeake & Ohio Railway Company operated a parlor and buffet car on this train, arriving at Charleston at 9:10 a. m., which furnished sufficient accommodations for all passengers transferring to its train from the Wheeling sleeper at Huntington for Charleston. It was urged that passengers going to Charleston were required to rise at 7:15 a m., and be transported across the city in carriages, in order to take the Chesapeake & Ohio train, and returning from Charleston would arrive at Huntington at 9 p. m., where they would again be required to transfer to the Wheeling sleeper, which left Huntington at 11:50 p. m. It also appeared that this additional service would result in a loss to the Chesapeake & Ohio Railway Company. The Supreme Court of West Virginia reversed the order of the commission (Chesapeake & Ohio Ry. Co. v.

Public Service Commission, 78 W. Va. 667, 89 S. E. 844), for the reason that the order imposed an unreasonable and unnecessary burden, in view of the facilities already furnished, and was unjust and unfair to the carrier, because of this unnecessary burden and the pecuniary loss which would be incurred in the performance of the order.

In the case at bar the Corporation Commission finds that the expense to appellants for the use of Pullman cars per year is $6,000, being approximately $20 per day per car. If two additional Pullmans be required to render the additional service, this would entail an extra expense of $40 per day, saying nothing about the operating expense of hauling the cars, the wear and tear of the track, and repairs and other items. The evidence shows that the total patronage between Oklahoma City and Ardmore is insufficient to pay the operating expenses of these two cars alone, and without any demand therefor justifying the additional accommodations, if all the traffic between the two points is considered, there would be a clear loss to the company of between $2,000 and $3,000 per year. In addition to this, the passenger traffic between the two points during the year 1916, covering a period of 7 months, decreased more than 30 per cent. Under this statement of facts, the order appealed from is unreasonable and unjust, and imposes an unnecessary burden upon the appellants.

The question of expense in requiring facilities by a carrier is not always conclusive. United States Express Co. v. State, 47 Okla. 656, 150 Pac. 178. But where adequate and sufficient facilities have already been furnished and the order requiring additional facilities is not necessary for proper and convenient accommodation of the traffic to be benefited, the question of expense becomes an important criterion to be considered in determining the reasonableness of the order. Oregon R. & N. Co. v. Fairchild, 224 U. S. 510, 32 Sup. Ct. 535, 56 L. Ed. 863. It appearing that the traffic is already suitably provided for, and that compliance with the order would involve a financial loss to the appellants, we must say that the order is unreasonable, and the prima facie presumption that the order is reasonable, under section 22, art. 9, of the Constitution, is overcome, and no longer obtains.

The order is therefore reversed.