## MISSOURI-KANSAS-TEXAS R. CO. v. STATE.

No. 29757. · Oct. 21, 1941.

Rehearing Denied Dec. 16, 1941.

*119 P. 2d 835.*

M. D. Green, John E. M. Taylor, and Lloyd W. Jones, all of Oklahoma City, for appellant.

L. V. Reid, General Counsel for Corporation Commission of Oklahoma, and S. J. Gordon and Ed White, Assts., for appellee.

GIBSON, J. This is an appeal from an order of the Corporation Commission denying appellant railroad company's application to discontinue two passenger trains operating between Oklahoma City and Parsons, Kan., the next terminal north of the Oklahoma border.

Permission to discontinue was sought on the ground that public necessity and convenience no longer required · such service or justified the continuance thereof in the face of the prolonged financial loss resulting to the company from said service.

The trains in question are numbered 25 and 26, operated in the daytime, one running north, the other south, daily. Petitioner proposes to leave in full operation two certain trains running daily, one north, the other south, in the nighttime, and to extend the service thereof to include all conveniences of the other two trains.

The evidence shows that the two day trains were being operated at a substantial loss and had been so operated over a considerable period of time; that the

two night trains, in addition to their present service, would be operated so as to give the same character of service as the day trains, thus merging the four trains into two. The only inconvenience therefrom, as shown by the protestants, was some delay in the reception of mails and express, and less convenient connection with trains operating in Kansas. The findings of the commission in this regard are reflected in the following portion of its report:

"A railroad cannot expect to operate each branch of its business at a profit. Its primary duty is to afford adequate facilities, and it has not been shown in this record that the necessities and conveniences of the public along the line in Oklahoma can be adequately served in the absence of the service of said trains. Day time service would be discontinued and mail and express service delayed, adversely affecting business houses who patronize the railroad in their freight shipments. The commission is therefore of the opinion that the application should be denied."

The company charges that the evidence does not sustain the findings, nor the findings the order, and that such order would deprive the company of its property without due process of law.

The trains sought to be discontinued are operating in interstate commerce, but neither the company nor the commission purports to invoke or to extend the jurisdiction beyond the border of the state.

The order of the commission denying the application to discontinue trains No. 25 and No. 26 does not involve the charter, or absolute, duty of a public service company as defined in the decisions, state and federal, dealing with matters of this character, but involves merely the question of additional facilities for the public convenience and necessity where such facilities are allegedly being provided. In instances where the railroad company seeks permission to consolidate its various efforts in providing certain services, or where the commission orders the company to enlarge its efforts in this respect, the question of expense to the company is an important element in determining whether it should be allowed to restrict or required to enlarge or continue its present facilities. The expense to the company in furnishing the facilities and the relative benefit to the public is the deciding factor. Lowden v. State, 186 Okla. 654, 100 P. 2d 890. The rule is there stated as follows:

"In the performance of an absolute duty by the railway company, the question of expense is not to be considered, but where the duty sought to be enforced is one of additional convenience rather than necessity, the question of expense to the company and relative benefit to the public is the deciding factor and may not be disregarded."

The maintenance of an adequate and reasonable mail and express service on the particular line is probably among the absolute duties of the company so long as it retains the privileges granted to it by the state. However, it does not propose to abandon that service, but to decrease the facilities by which the service has been heretofore performed. The question is whether the decreased facilities will be adequate and reasonable under the circumstances; and the question of expense to the company and relative benefit to the public is the deciding factor. In all such cases the particular facilities should be reasonably commensurate with the patronage and receipts from the public to whom the service is rendered. St. Louis & S. F. R. Co. v. Newell, 25 Okla. 502, 106 P. 818.

In connection with the question of the carrier's duty to furnish additional facilities, this court in Atchison, T. & S. F. Ry. Co. v. State, 71 Okla. 167, 176 P. 393, had the following to say:

"The question of expense in requiring facilities by a carrier is not always conclusive. United States Express Co. v. State, 47 Okla. 656, 150 P. 178. But where adequate and sufficient facilities have already been furnished and the order requiring additional facilities is not necessary for proper and convenient accommodation of the traffic to be benefited, the question of expense becomes an important criterion to be considered

in determining the reasonableness of the order. Oregon R. & N. Co. v. Fairchild, 224 U. S. 510, 32 S. Ct. 535, 56 L. Ed. 863."

The evidence shows that the two night trains will continue to render the identical service heretofore performed by all four trains, with the exception that the delivery of mail and express will be delayed a few hours; that the cost of the present service is wholly out of proportion to the revenue derived from the public so served. It was shown that the annual loss resulting from the operation of the day trains within the state was approximately $20,000.

The general rule to be applied in cases of this character in determining whether the substituted facilities are adequate and reasonable is stated in Kurn v. State, 175 Okla. 379, 52 P. 2d 841, as follows:

"The term 'adequate or reasonable facilities' is not in its nature capable of exact definition. It is a relative expression, and has to be considered as calling for such facilities as might be fairly demanded, regard being had, among other things, to the size of the place, the extent of the demand for transportation, the cost of furnishing the additional accommodation asked for, and to all other facts which would have a bearing upon the question of convenience and cost."

Convenience and cost are the controlling elements, and the one must be weighed against the other.

Here it was shown that the proposed substituted service would be essentially the same as the present service, but somewhat less convenient.

The operation of passenger trains with mail and express service over the particular line may be among the absolute duties of the company, but to operate more trains than the public demand will justify is not an absolute duty. A curtailment of the facilities is justified where the present cost is out of proportion to the revenue derived from that portion of the public served and the proposed or substituted facilities will provide the same essential service, though it may be less convenient. In

Kurn v. State, supra, the court had under consideration the railroad company's application for permission to discontinue the services of a certain full-time station agent and to substitute therefor a part-time agent. The following rule was there expressed:

"It is not reasonable to require the maintenance of a full-time agency station when the cost of such service is out of proportion to the revenue derived from that portion of the traveling public benefited thereby, especially where a substitute service may be provided which will afford the same essential service but is less convenient."

This will apply as well to the substitution of train service on a particular line where the proposed train facilities will afford the same essential service.

The record shows that the two night trains with the added service proposed by the company will furnish reasonable and adequate mail and express facilities to the public served by the trains. The order requiring the company to maintain the two day trains at a financial loss is therefore unreasonable. Atchison, T. & S. F. Ry. Co. v. State, supra. Pullman car service was the subject of controversy in that case, but the question there, as here, was one of adequate facilities to meet the demand of the public served by the particular section of the railroad. No question of abandonment of an absolute duty was involved there. Neither is such question present in this case. The rule stated in the last-cited case is helpful here. It reads as follows:

"Where reasonable and adequate Pullman service has been furnished by a railroad company to accommodate all intrastate traffic between two points within this state, an order which requires additional Pullman service between said points is unreasonable, when such additional service can only be furnished at a loss to the railroad company."

A similar question was involved in Cincinnati Northern Ry. Co. v. Public Utilities Commission of Ohio, 119 Ohio St. 568, 165 N. E. 38. The rule was there expressed as follows:

688

"On application by railroads to discontinue trains carrying passengers, mail, and express between certain cities, evidence that revenue for line was steadily decreasing and had resulted in loss, $30,000 for first four months of 1928, and that traffic facilities for mail and express, if abandoned by railroad, might be secured by truck or otherwise, enjoyment of facilities by public was not commensurate with cost necessary to supply them authorizing abandonment of line under Gen. Code, sec. 504-3 though railroads as whole were making profit, and though discontinuance of mail and express service would cause some public inconvenience."

In State of Washington ex rel. Oregon Railroad, etc., Co. v. Fairchild, 224 U. S. 510, 32 S. Ct. 535, 56 L. Ed. 863, the court had under consideration an order of the State Railroad Commission requiring the railroad company to furnish additional shipping facilities of a nature not within its absolute duties. In the body of the opinion in that case we find the following statement:

"The question in each case must be determined in the light of all the facts, and with a just regard to the advantage to be derived by the public and the expense to be incurred by the carrier. For while the question of expense must always be considered (Chicago, etc., R. R. v. Tompkins, 176 U. S. 167, 174), the weight to be given that fact depends somewhat on the character of the facilities sought. If the order involves the use of property needed in the discharge of those duties which the carrier is bound to perform, then, upon proof of the necessity, the order will be granted, even though 'the furnishing of such necessary facilities may occasion an incidental pecuniary loss.' But even then the matter of expense is 'an important criteria to be taken into view in determining the reasonableness of the order.' Atlantic Coast Line R. R. v. North Carolina Commission, 206 U. S. 1, 27; Missouri Pacific Ry. v. Kansas, 216 U. S. 262. Where, however, the proceeding is brought to compel a carrier to furnish a facility not included within its absolute duties, the question of expense is of more controlling importance. In determining the reasonableness of such an order the court must consider all the facts,—the places and persons interested, the volume of business to be affected, the saving in time and expense to the shipper, as against the cost and loss to the carrier. On a consideration of such and similar facts the question of public necessity and the reasonableness of the order must be determined."

And in the syllabus the following rule is stated:

"In a proceeding brought to compel a carrier to furnish facilities not included in its absolute duties, the question of expense is of controlling importance."

So far as the issues in this case are concerned, the absolute duty of the company could be no more than to furnish reasonably adequate mail and express facilities along the line of road in question. Beyond that requirement the point of consideration resolves itself into one of convenience to the public as counterbalanced with cost to the company. If reasonably adequate service is being rendered by the facilities in use, the item of cost of additional facilities is the controlling factor. The furnishing of any facilities in excess of those that are essential to reasonably adequate service is not to be classed among the absolute, or charter, duties of the company.

The cost of any facilities that the state may require in addition to reasonably adequate facilities for the performance of an absolute duty is of extreme importance. To require such facilities at a loss to the carrier would be arbitrary and unreasonable, and would serve to deprive the carrier of its property without due process of law. In Mississippi Railroad Commission v. Mobile & Ohio Railroad Co., 244 U. S. 388, 37 S. Ct. 602, 61 L. Ed. 1216, it was said:

"This power of regulation, if it is exercised in such an arbitrary or unreasonable manner as to prevent the company from obtaining a fair return upon the property invested in the public service, passes beyond lawful bounds and is void, because repugnant to the due process of law provision of the 14th Amendment to the Constitution of the United States."

The appellee says that the burden was on the company to show not only that

the public necessity and convenience would be met by the operation of the two night trains, but also to show a financial loss after considering all revenues, state and interstate, on the entire line in question.

It is insisted that unless a loss is shown after considering such revenues, the company has failed to prove that its property will be taken without due process by an order denying its application to discontinue the day trains. State v. Georgia Southern & F. Ry. Co. (Fla.) 190 So. 527.

But the latter case is not in point. There, as here, the carrier sought to discontinue certain trains, and the court said that the duty of the carrier to provide and maintain appropriate train service to meet the public needs must be performed even though its cost exceeds the receipts from rendering the particular service, when the burden of such latter service does not unduly impair the total revenue receipts of the carrier from all sources on its entire system, so as to amount to a deprivation of its property without due process of law. The decision holds, in effect, that if the carrier would decrease its facilities presently employed in the performance of an absolute duty to a degree that would not fulfill the public needs, it must show that the financial burden of the service to be abandoned would unduly impair the revenues derived from its entire system.

In the instant case, as we have said, the public needs will be reasonably met by the service of the two night trains.

In keeping with our previous decisions, supra, the two day trains constitute an additional service beyond the reasonable demands of the public and beyond the absolute duties of the company, and the cost thereof must be weighed against the mere convenience to the public.

When a common carrier seeks to avoid an absolute duty, the revenues from other sources on its system are to be considered in determining the question of due process in such case. Chesa-peake & Ohio Ry. Co. v. Public Service Comm. of West Va., 242 U. S. 603, 37 S. Ct. 234, 61 L. Ed. 520. In that case an act of the Legislature granted to the carrier the right to construct and operate a branch line to be "free to all persons for the transportation of their persons and property," subject to the payment of lawful charges for such service. An order of the state commission requiring the establishment of passenger service on the line in addition to the freight service then in operation was resisted. The court held as follows:

"An order of the State Public Service Commission requiring the installation and maintenance of a passenger service upon a branch railway line which has hitherto been used for freight traffic only is not repugnant to the due process of law and equal protection of the laws clauses of U. S. Const. 14th Amend., although the passenger service so ordered, if separately considered, may entail some pecuniary loss, where, under the local law (W. Va. Acts 1881, chap. 17, secs. 69, 71, Code 1913, chap. 54, secs. 2983, 2995), such branch line was, in legal contemplation, devoted to the transportation of passengers as well as of freight, even though actually used only for the latter, and it does not appear either that the railway company's intrastate passenger business will not yield a reasonable return if the new service is installed, or that the traffic, freight and passenger, passing over the branch line to and from points on the main line, will not do so."

That case will serve as an illustration of the manner in which all revenues are considered in connection with the validity of an order requiring a carrier to perform an absolute duty.

We are aware of no decisions that recognize the necessity of examining into all revenues of a carrier in an effort to determine whether an order requiring it to furnish facilities in addition to those reasonably necessary to meet the public demands would be arbitrary and unreasonable, and a deprivation of its property without due process of law.

The numerous cases cited by appellee involved either a refusal on the part of the carrier to furnish reasonably nec-

690

essary facilities actually to perform an absolute duty, or the effort of the carrier to abandon facilities necessary to the performance of such duty.

When, as here, reduced facilities will afford the same essential service as presently performed, with mere inconvenience resulting to the public, then, if the cost of the present service is out of proportion to the revenue derived from 'that portion of the public served by the particular facilities, an order requiring the carrier to maintain and operate its present facilities is unreasonable. Such was the situation in this case.

When a common carrier is called upon to alleviate a mere public inconvenience in the matter of transportation, the cost to be incurred thereby is of paramount importance. If the maintenance of facilities necessary to relieve the situation will result in financial loss in performing the particular service wherein the inconvenience arose, to require such facilities would be to take the carrier's property without due process of law.

The order of the commission is not supported by the evidence. The same is therefore reversed and the proceedings remanded, with directions to grant the application.

WELCH, C. J., and RILEY, OSBORN, BAYLESS, DAVISON, and ARNOLD, JJ., concur. CORN, V. C. J., and HURST, J., dissent.