LINCOLN TRACTION COMPANY, APPELLEE, V. OMAHA, LIN- COLN & BEATRICE RAILWAY COMPANY, APPELLANT.

FILED MARCH 29, 1922.    No. 21942.

1.  Injunction: STREET RAILWAYS: USE OF STREETS.  It is not neces- sary, in order that a street railway company question the authority of another street railway company to construct tracks upon the streets of a city, so as to handle business which the first company is lawfully carrying on, that the first company should have an ex- clusive franchise, but, where it has a lawful right to carry on a street railway business, its right is exclusive as against any person or company which attempts to operate in competition with it upon streets where the second company has no legal authority to go.

2.  ——: ——: ——: GRANT OF POWERS: IRREGULARITIES. A right accruing to a street railway company, by virtue of its con- struction and operation of street railway lines, under an irregular grant of power from the city, and which grant was given by the approval of a vote of the majority of the electors of the city, is a property right which cannot unlawfully be interfered with, and such company is entitled to protection against unlawful encroach- ment upon its business by another company, the same as if the franchise grant to it had been regular.

3.  Street Railways: GRANT OF POWERS: CONSTRUCTION.  The grant of powers under a franchise to a street railway company is to be construed most strictly against the company, and, where the grant to go upon particular streets is not expressly made, or does not follow by necessary implication from the grants which are made, or where there is any doubt about the matter, the holding will be against the grant.

4.  ——: USE OF STREETS: JOINT USE OF TRACKS.  A local street railway company, with its tracks upon the city's streets, does not have the exclusive right to the use of those streets, and, though its trackage system and appurtenances are private property, it

may, by legislative authority, be compelled to permit another company, where proper conditions are imposed and where compensation is provided, to use a portion of its tracks, if the public interest will be promoted thereby, and if the rendition of that use does not result in such detriment or prejudice to the company affected as to make the regulation unreasonable.

5. ——: ——: POWERS OF CITY COUNCIL. The statute (Laws 1917, ch. 216, sec. 9), providing that the city council may require a local street railway company to permit an interurban company to use its tracks, so that the interurban company may enter the city and have terminal facilities therein, is not broad enough in scope to authorize the city council to grant to an interurban company the right to use other tracks of the street railway company for the purpose of extending the interurban's local street railway business within the city and of diverting to its own lines street railway business which would otherwise have gone to the local company.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. Affirmed.

D. J. Flaherty and T. S. Allen, for appellant.

Field, Ricketts & Ricketts, Hall, Baird & Williams and E. J. Hainer, contra.

Heard before MORRISSEY, C. J., ROSE, ALDRICH and FLANSBURG, JJ., DICKSON and STAUFFER, District Judges.

FLANSBURG, J.

This was an action brought by the Lincoln Traction Company, plaintiff, against the Omaha, Lincoln & Beatrice Railway Company, defendant, to enjoin the defendant from building some 600 feet of street railway track in the streets of the city of Lincoln, and to enjoin the defendant from using, for the purposes of its own railway business, certain street railway tracks belonging to the plaintiff. The injunction was allowed and defendant appeals.

The Lincoln Traction Company is a Nebraska corporation and owns and operates a system of street railway in the city of Lincoln.

The Omaha, Lincoln & Beatrice Railway Company is a corporation, operating an interurban railway. Its tracks

enter the city from the east, and then pass within some 600 feet of the entrance to the farm campus of the Nebraska University, and proceed along the streets of the city in a westerly direction until Fourteenth street is reached, when the tracks proceed south, passing the east side of the city campus of the University; the city and farm campus being about two and three-quarters miles apart. These tracks, therefore, furnish a reasonably direct route between the university city campus and the university farm campus, except that at the farm campus, the tracks, at their nearest point, pass the farm entrance at some 600 feet distant, and at the city campus the tracks pass along the east instead of the south side, and several hundred feet distant from the south and main entrances to the city campus. The defendant Omaha, Lincoln & Beatrice Railway Company proposes to construct a track from the nearest point on its main line, so as to extend to the entrance to the farm campus. That track would pass along and over Idlewild Drive in the city of Lincoln, and would be some 600 feet in length. The construction of that track the plaintiff seeks to enjoin.

The Omaha, Lincoln & Beatrice Railway Company also proposes to use certain tracks, which belong to the plaintiff Lincoln Traction Company, located south of the city campus of the University of Nebraska, and which pass directly in front of the south entrances to such city campus, so as to be able to go around a loop, formed by its tracks and the tracks of the Lincoln Traction Company, and so as to be able to pass its cars, over plaintiff's tracks, in front of the south entrances.

By adding these two facilities to its present system, the Omaha, Lincoln & Beatrice Railway Company would have a trackage by which it could render a street railway service from the city campus to the entrance to the farm campus by a more direct route than could the plaintiff Lincoln Traction Company.

For some years the Lincoln Traction Company has been

rendering street railway service between the farm campus and the city campus by, in part, using the trackage facilities of the Omaha, Lincoln & Beatrice Railway Company, under an agreement and lease, entered into by and between the two companies, but the rights under that agreement have been declared terminated, and, as we do not consider the status of the parties under that agreement material in this case, that agreement, or the operation by the companies thereunder, will not be further mentioned.

The Lincoln Traction Company, however, has trackage facilities by which it is able to render, and has in the past rendered, street railway service between the city campus and the entrance to the farm campus, by going west from the city campus, then south to O street and east for a distance, and then back north again. This route between the two points, however, is longer and more indirect, and through a district where passenger traffic is heavier and where more frequent stops are required, than over the route furnished by the trackage of the Omaha, Lincoln & Beatrice Railway Company.

In June, 1920, the city council of the city of Lincoln enacted two ordinances. One of these ordinances, of date June 1, 1920, granted permission to defendant Omaha, Lincoln & Beatrice Railway Company to connect with and use, for railway purposes, the tracks of the plaintiff Lincoln Traction Company, so as to form a loop of tracks and so as to enable the Omaha, Lincoln & Beatrice Railway Company to run its cars over plaintiff's tracks and in front of the main entrance to the city campus of the University. The permission to use those tracks was intended to be granted in pursuances of statute (Laws 1917, ch. 216, sec. 9), and was to be upon "terms and conditions to be fixed by the Nebraska state railway commission."

On June 14, 1920, a second ordinance was enacted, purporting to grant permission to the Omaha, Lincoln & Beatrice Railway Company to construct, maintain and operate the proposed track, now in controversy, along and upon

Idlewild Drive. The permission to build that track was absolute and not made conditional upon the approval of the electors, nor was the question of permission to construct the track and maintain service over it ever submitted, or intended to be submitted, to a vote of the electors.

On June 14, 1920, immediately after the passage of the second ordinance, the Lincoln Traction Company, plaintiff, brought this action, to enjoin the Omaha, Lincoln & Beatrice Railway Company from constructing any track on Idlewild Drive, and from using the tracks, lying in front of and to the south of the city campus and belonging to the Lincoln Traction Company.

It is the defendant's contention that plaintiff is not entitled to bring the action to enjoin the construction of tracks by the defendant, for the reason that the plaintiff has no special interest; that it is not affected differently from any other citizen; and that the question of the authority in the defendant to construct the tracks and operate a railway service, under color of the permission granted to it by the ordinance, can only be questioned on the relation of the state. The defendant argues that the Lincoln Traction Company has no valid franchise, and that, whatever its rights are, they are not exclusive, in the sense that the city is prevented from granting to any other company the right to conduct a street railway business in the city.

The right of the Lincoln Traction Company to operate its street railway system upon certain streets in the city of Lincoln, including those tracks upon which the defendant now seeks to operate, as well as those tracks of the plaintiff company by which it is able to furnish street railway service between the city and farm campus, has been established by the decision in *State v. Lincoln Street R. Co.*, 80 Neb. 333. In that case it is said that the construction and operation of street railway lines, under a blanket permission from the electors to go upon all the streets of the city, gave to the street railway company an easement in the streets occupied, though the blanket license did not

give the right to extend lines, or to go upon other streets than those which had become occupied within a reasonable time after the grant of permission had been given.

In the case of *Herpolsheimer Co. v. Lincoln Traction Co.*, 96 Neb. 154, the right of the plaintiff company in the streets was not only recognized, but its duty to continue upon the streets occupied and to render service as a street railway company was enforced, and it was declared in that case that the traction company could not remove tracks or change service without the consent of the railway commission.

It is clear, however, that the rights of the Lincoln Traction Company to do a street railway business in the city of Lincoln is not exclusive, in the sense that the city has placed itself in a position where it is prevented from granting to some other company the right to carry on a like business. Nevertheless, the plaintiff company is lawfully upon the streets. It not only has the right, but owes the duty, to render full and adequate street railway service upon the streets occupied by it. Such street railway service is a lawful business, and the right to carry on that business—a right accruing to the plaintiff company by virtue of its construction and operation of street railway lines under a "blanket" franchise, which had received the approval of a vote of a majority of the electors of the city—is a property right which cannot unlawfully be interfered with. Where, therefore, the defendant company proposes to construct a track which it intends to utilize, with the purpose of taking from the plaintiff company a specific portion of the railway traffic, which the plaintiff company, in accordance with its right and duty, now handles, we believe that the plaintiff company, in the protection of its right, is entitled to object to the construction of such a track by the defendant company, until legal authority for such construction is granted by the city.

Though it is the general rule that injunction is the proper remedy to protect a company in the enjoyment of

an exclusive franchise, in some states it is held that, where the complaining company has not an exclusive franchise, it has no authority to question the franchise rights of a rival company, and that an action against the rival company, questioning franchise rights, can be instituted only on the relation of the state.

The majority rule, and one which we believe is sustained by better reasoning, is as stated by 5 Pomeroy, Equity Jurisprudence (2d ed.) sec. 2017, as follows: "It is not necessary, 'to entitle the owner to relief in equity, that the franchise should be an exclusive franchise in the sense that the grant of another similar franchise to be exercised and enjoyed at the same place would be void.' The theory is 'that the defendant, who has no franchise, is acting in violation of law in operating * * * without authority from the sovereign power, and that the owner of the franchise may complain of and restrain such illegal acts when they result in injury to his franchise, which, in the eye of the law, is property. As to the one who is invading his rights without legal sanction, the franchise is an exclusive franchise, although the owner of it might not be entitled to any protection as against the granting of a similar franchise to another.' "

The decisions supporting this rule are collected and discussed in the following cases and the annotations cited: *Bartlesville Electric Light & Power Co. v. Bartlesville I. R. Co.*, 26 Okla. 453; *Lindsley v. Dallas C. Street R. Co.*, 200 S. W. (Tex. Civ. App.) 207; *Puget Sound Traction, Light & Power Co. v. Grassmeyer*, 102 Wash. 482; *Memphis Street R. Co. v. Rapid Transit Co.*, 133 Tenn. 99; *Patterson v. Wollmann*, 5 N. Dak. 608; *Millville Gas Light Co. v. Vineland Light & Power Co.*, 72 N. J. Eq. 305. See note, 29 L. R. A. n. s. 77; and note, L. R. A. 1916B, 1087.

We believe the rule is applicable in this case. The suit here does not alone question the acts of another company, upon the ground that those acts are *ultra vires* of the other company's powers, as was the case of *Burns v. St. Paul*

*C. R. Co.*, 101 Minn. 363; and see note, L. R. A. 1916B, 1087; but the object of this injunction is to preserve plaintiff's right to carry on a street railway business, a right which must be based upon the consent of the electors of the city, and which is, in its nature, exclusive as against every other company, seeking to take a part of that business by operating on streets where it has no legal right to go. Though the public grant of franchise rights be irregular, an acceptance of the grant, and construction and operation under it, may estop the municipality to deny that it consented. 7 A. L. R. 1252. And where the rights of a company upon the streets are so acquired, they are as much entitled to protection against unlawful encroachment by another company as if the franchise had been regular.

The defendant does not contend that it has received any express authority, under its franchise granted it by a vote of the electors of the city, to construct the track in question upon and along Idlewild Drive, but it does claim that, by reason of grants expressly made, it has been given the implied authority to do so. The articles of incorporation of the Omaha, Lincoln & Beatrice Railway Company provide for the construction of a railroad and such branch lines as the directors may determine, such road to extend from Omaha through the city of Lincoln and to the southern boundary of the state. The franchise, granted to the Omaha, Lincoln & Beatrice Railway Company by the voters of the city of Lincoln in 1904, gave it the right to "locate, construct, maintain and operate lines of interurban railroad, its cars to be propelled by electricity or other motive power than that commonly termed steam, and the right is granted to place and maintain single and double tracks, switches, turnouts, crossings, cross-overs, spurs, and connecting tracks, poles, wires, conduits, signals and other equipments, appliances and structures necessary for the perfect operation of said railroad * * * in, over, under, upon, along and across certain streets, alleys, ways * * * and places in the city of Lincoln, to wit,"—then follows a

specific description of the streets within the city over which the lines of street railway were authorized to be constructed, including the line of railway which we have above mentioned, which passes some 600 feet distant from the entrance to the farm campus of the university.

It is true that some cases hold, as pointed out by the defendant, that, where switches, turnouts, or additional track facilities are shown to be essential and necessary to carry out the scheme of railway service, which has in fact been permitted, a grant of permission to build such additions will, though no mention is made of them in the franchise, necessarily, be held to have been implied. Where, for instance, a railway company has authority to build its system of tracks over specified streets mentioned, without mention of switches and turnouts, and must build switches and turnouts in order to operate upon such streets, or where it has authority to construct a power house or car barn, and where the specific grant given has not covered or expressly mentioned connections between such establishments and the trackage system, then an authority to construct the necessary turnouts and switches, or spur tracks, has been held to be necessarily implied, since in those cases the construction of such tracks is absolutely essential to the operation of the system as an entirety and to carry out the express purpose of the specific grant. Such a case is that of *Romer v. St. Paul C. R. Co.*, 75 Minn. 211. That rule and cases supporting it are found in 36 Cyc. 1389.

Those cases, however, are utterly different from the case here, where the spur track asked for is not something which is essential and necessary to conduct the railway service of the defendant company upon the streets where it has been specifically authorized to go. The defendant company does not seek to connect its track with a car barn, or some other establishment belonging to its system, which it must operate in connection with its tracks, nor to construct switches or turnouts upon the streets over which it has been granted authority to go, but the grant of track-

age facilities sought here is for the purpose of enlarging and adding to the extent of service that the interurban company has furnished in the past, and for the purpose of carrying its railway business upon other streets than the streets mentioned in its franchise. Clearly, there can be no implied authority to extend its lines upon other streets than where the grant of permission has been given, for the purpose of extending its service and of carrying its railway business into new territory.

The grant of powers to the defendant company under its franchise is to be construed most strictly against the company, and, where the grant to build a track is not expressly made, or does not follow by necessary implication from the grants which are made, or where there is any doubt about the matter, the holding will be against the grant. *City of Dubuque v. Dubuque Electric Co.,* 188 Ia. 1192; *Virginia R. & P. Co. v. City of Richmond,* 129 Va. 592; *United Railroads v. City and County of San Francisco,* 239 Fed. 987; 25 R. C. L. 1137, sec. 25.

The Constitution (Const. 1875, art. XIb, sec. 2) prohibits any city from granting the right to construct and operate a street railway upon the streets of a city without first obtaining the consent of a majority of the voters of such city. The ordinance purporting to grant to the Omaha, Lincoln & Beatrice Railway Company the right to construct and operate a street railway line upon and along Idlewild Drive, a street in the city of Lincoln, and without the consent of a majority of the voters of the city of Lincoln, is in direct violation of the constitutional inhibition and must be held to be invalid and inoperative.

There is, of course, no serious doubt but that the plaintiff company is possessed of such property interests as to be entitled to institute a suit to question the legal right of the defendant to use the plaintiff's tracks. 36 Cyc. 1418.

It is the defendant's contention that the city council was authorized to grant to the defendant company the right to use the tracks in question under and by virtue of the

statute (Laws 1917, ch. 216, sec. 9), providing that, "If an interurban railway company has a line or lines of railway constructed to the city limits of any city having within its corporate limits a street railway line, lines, system or systems, the city council, or other governing body, may grant to the corporation owning or operating such interurban railway the right to enter and pass through the city, and use the tracks of any street railway already in operation within said city; provided, however, that the state railway commission shall fix and determine just and reasonable terms and conditions upon which such interurban railway company may use said tracks, power, and other transportation facilities."

The purpose and intent of this statute is clear. An interurban company, whose primary business is to handle traffic between cities, necessarily must enter and have access to the central portions of the cities between which it operates, so as to be furnished with proper terminal facilities. The legislature, no doubt, had in mind that interurban business and local street railway business are of such a different character that, when each is strictly pursued, one does not conflict with the other. It is easily seen that an interurban company might be allowed to enter a town and reach the central portions thereof by traveling on the tracks of a local street railway company, and that its use of the tracks could be so limited and conditioned that the local business of the street railway company would not be unreasonably affected, while at the same time all of the objects and benefits, sought by the statute to be attained for the interurban company, would be fully accomplished. By the use of the tracks of the local street railway company an interurban company could be given the opportunity to have fair and reasonable terminal facilities in the center of town, by which it would be enabled to gather up interurban traffic and carry it over its lines. It was for the purpose only of meeting that necessity that the statute was enacted.

A local street railway company, it is true, with its tracks upon the city street, does not have the exclusive right to the use of the street (*United Railroads v. City and County of San Francisco, supra*), and even its trackage system and appurtenances, though private property, are subject to reasonable regulation and use. By legislative authority it may be compelled to permit another company, upon proper conditions and where compensation is provided, to use its tracks where the use is not for the private benefit of the other company (*Petition of Philadelphia, M. & S. Street R. Co.*, 203 Pa. St. 354), but is reasonably required by public necessity, and where the rendition of that use does not result in such detriment or prejudice to the company owning the tracks as to make the regulation unreasonable. *Pacific R. Co. v. Wade*, 91 Cal. 449; *Metropolitan R. Co. v. Highland Street R. Co.*, 118 Mass. 290; *Tulsa Street R. Co. v. Oklahoma U. R. Co.*, 76 Okl. 102; *Grand A. R. Co. v. Citizens R. Co.*, 148 Mo. 665; *Oregon-Washington R. & N. Co. v. Spokane, P. & S. R. Co.*, 83 Or. 549; *Union D. R. Co. v. Southern R. Co.*, 105 Mo. 562; *Canal & C. R. Co. v. Crescent City R: Co.*, 44 La. Ann. 485; *Sixth Avenue R. Co. v. Kerr*, 45 Barb. (N. Y.) 138; *Kinsman Street R. Co. v. Broadway & N. Street R. Co.*, 36 Ohio St. 239. Such requirement, that one company shall to a reasonable extent permit the use of its railway tracks to another, is not considered as a taking of property, but as a regulation of the use to which the property has been voluntarily dedicated, since the track, though private property, has, in a sense, become a part of the street. *General Electric R. Co. v. Chicago C. R. Co.*, 66 Ill. App. 362. In the central portions of town, where traffic is more congested and centralized, it is often the case that street railway tracks will be found on nearly all of the important streets. That does not prevent the governing authorities from granting permission to other street railway companies to use portions of those tracks, since the use of those particular streets by street railways may be essential to

the operation of a system of street railway extending out over the city and beyond. Where two street railways serve different territories, a requirement is easily justified which would compel the one company to allow the other company to use its tracks in a central district, so as to avoid the inconvenience to the public of double trackage, and so that both companies should have proper terminal facilities. Such use can be duly compensated and conditioned, and the joint use need not unreasonably interfere with the business of either company, nor result in injury to the company owning the tracks.

The statute in question is not so broad in scope as to cover the matter of the use of street railway tracks generally and, in the various conditions which might arise, to regulate the use and to prescribe when and under what conditions local street railways should permit the use of their tracks and facilities, the one to the other. It is confined to the matter of furnishing interurban companies entrance to cities and an opportunity to thus gather interurban business.

The legislature has, by the statute, recognized the necessity of an interurban railroad having entrance to a town, and that such necessity is a sufficient justification to warrant the city council in permitting the use to the interurban of the street railway tracks of a local company. The legislature, having recognized that such necessity exists, did not require that the city council, before granting such use, should first determine the question of whether or not public necessity required the joint use by the two companies, nor the question of the practicability of such use, nor the extent of inconvenience or detriment that might result to the company owning the tracks. Had the legislature intended to grant to the council authority to give one local street railway, or an interurban doing local street railway business, the right to use the tracks of another local street railway company in local street railway business, it would have conditioned that right so that permission could be

granted only where the council should find that the circumstances were sufficient to show that public necessity required the joint use, and that the use would not result in discrimination or such a detriment to the company owning the tracks as would make the regulation unreasonable.

It is suggested that the city, by its ordinance, has, to the extent that it has power and control over the streets of the city, granted to the interurban the right to go upon those streets and use the tracks of the plaintiff company, and that the railway commission has full and plenary power of regulation, legislative in character, over street railways, except in so far as that power is limited by act of the legislature (*In re Lincoln Traction Co.*, 103 Neb. 229; *Blackledge v. Farmers Independent Telephone Co.*, 105 Neb. 713), and that the railway commission has, therefore, the power, in view of the permission granted by the city, to authorize the use and fix the conditions and compensation to be paid. It would seem that, as the statute so construed does not cover the subject, whatever joint use could be justified as a regulation by legislative act, the railway commission would have authority to order, since the city, which has authority and control over the streets, has given its consent. But that question is not now presented by the record. The grant to the defendant of the use of the plaintiff's tracks was done by order of the city council. The council must find its authority to act delegated to it by statute.

The interurban company in this case has a track of its own, constructed under grant from the city. From this it is able to and does enter the city and has reasonable terminal facilities therein. Its tracks are also reasonably accessible to the city campus, since they pass immediately along the east side thereof. It does not seek the use of the tracks in question for the purpose of procuring to itself an adequate terminal for its interurban traffic, but its paramount purpose in procuring the use of plaintiff's tracks is to enlarge its trackage facilities at the city

campus for the purpose of using that trackage to divert the University traffic to its own lines and away from the lines of the plaintiff company.

We do not mean to say that the interurban company, under its franchise, is precluded from doing a local street railway business over the streets where it has been authorized to act; in fact, it may be that, as to its tracks within the city, it is subject to control and regulation as a local street railway company, and could be compelled, so far as reasonable, to serve local needs along its own line (*Jeffers v. Mayor,* 107 Md. 268; *State v. Seattle, R. & S. R. Co.,* 64 Wash. 167); but we do say that we find no legislative authority in the council of the city of Lincoln to make a final determination of the right of the interurban company to the use of the tracks of the plaintiff company for the purpose of gaining advantage to such interurban company in the conduct of that local traffic.

The statute, as we view it, was enacted with an entirely different purpose in mind.

AFFIRMED.

ROSE, J., dissents.