# CHARLESTON.

ASA CARSON *v.* BENJAMIN WOODRAM *et als.*

Submitted December 4, 1923.    Decided December 11, 1923.

1.  LICENSES—*Law Licensing Operation of Passenger Automobiles for Hire Between Fixed Termini Held Valid.*

    A statute providing that no motor or other vehicle shall be operated over any public road or highway, or over any street or alley within an incorporated city or town in this State for

95 W. Va.

the carriage of passengers, freight or merchandise for hire, in such manner as to afford a regular means of transportation by indiscriminately receiving and discharging passengers, freight or merchandise, along the route on which the vehicle is operated, or for transporting passengers, freight of merchandise for hire, as a business between fixed and regular termini, until the owner or operator of such vehicle shall have first obtained from the proper licensing authority a permit for the purpose, is valid and constitutional; its enactment being a proper exercise of the police power of the State. (p. 199).

2. CARRIERS—*One Operating Automobiles Under Permit Between Fixed Termini for Carrying Passengers May Enjoin Others Without License from so Operating.*

A person operating automobiles under such permit over public highways between fixed termini for the carriage of passengers for hire, may enjoin others without such license or permit from engaging in like enterprise. (p. 201).

Appeal from Circuit Court, Cabell County.

Suit by Asa Carson against Benjamin Woodram and others. From a decree dissolving a temporary injunction, plaintiff appeals.

*Reversed, injunction reinstated, and cause remanded.*

*D. B. Daugherty,* for appellant.

*Darnell & Lovins, L. R. Via* and *C. E. Copen,* for appellees.

LITZ, JUDGE:

The plaintiff appeals from a decree entered December 19, 1922, by the judge of the circuit court of Cabell county, dissolving an injunction theretofore awarded against the defendants restraining them from operating automobile or bus lines for hire over certain public highways.

On December 6, 1922, the plaintiff presented his bill to the judge of the circuit court of Cabell county, in vacation, alleging that on the 21st day of January, 1922, he had obtained from the State road commission of this State, under Class I, Section 82, Chapter 112, Acts of the Legislature 1921, (Class I, Section 82, Chapter 43, Barnes' Code, 1923), a permit to operate an automobile line for the carriage of passengers for hire between the city of Huntington, Cabell county, and Glen-

wood,· Mason county, West Virginia, and, having given bond in the penalty of $3,000.00, since the issuance of the permit had been maintaining and operating thereunder an automobile·line on fixed daily schedules along and over this route; that the ·defendants, without such permit, had been and were operating automobile and bus lines upon and over the same route, for the carriage of passengers for hire, whereby the plaintiff, to his irreparable injury, was being deprived of a large patronage from the ·public he would otherwise enjoy. An injunction, ·as in the bill·prayed for, enjoining and restraining the defendants from operating automobile lines for hire and ·reward over or upon said route, was ·thereupon awarded. Subsequently, December 19,1922, upon motion of defendants, after the filing of their ·joint and separate answer and supporting affidavits, this injunction was wholly dissolved.

The answer admits that the plaintiff has obtained a permit from the State road commission and is operating thereunder a bus ·or automobile line, as alleged in the bill; but charges that the plaintiff is not rendering proper and adequate service to the public. It admits further that defendants for hire, and without a permit as required by the statute, have been and are operating automobile and bus lines upon and over the route in question, soliciting patronage from the public in furtherance of such business.

The answer also charges that the act under which the plaintiff's permit was granted is unconstitutional and void as affording the holders of such permits a monopoly on a special use of the public roads and highways; this being the only substantial defense offered by the defendants.

The Act provides:

> "*Class I*—No motor or other vehicle shall be operated over any public road or highway, or over any street or alley within an incorporated city or town in this State for the carriage of passengers, freight or merchandise for hire, in such manner as to afford a regular means of transportation by indiscriminately receiving and discharging passengers, freight or merchandise along the route on which the vehicle is operated, or for transporting passengers, freight or merchandise for hire as a busi-

95 W. Va.

ness between fixed and regular termini, until the owner or operator of such vehicle shall have first made application to and secured from the proper licensing authority a permit to operate such vehicle. If such applicant for license shall desire to operate such vehicle wholly within any city or incorporated town, such authority shall be the city or town council or corresponding body; in all other cases such authority shall be the state road commission.

"The application for such permit shall state the capacity of such vehicle or vehicles, the purpose for which the same is to be used, route over which the same shall travel and the rates proposed to be charged, and such other matters as the commission, or other licensing authority, as the case may be, shall from time to time prescribe. Before issuing any such permit, the commission or licensing authority, shall ascertain the public necessity for the proposed service. Such permit in any case may be denied, where public welfare will not be promoted by the granting thereof. If the permit be granted, the State road commission, or other licensing authority, as the case may be, shall prescribe the route, schedule, fare or traffic in connection with such service, and may make such other rules and regulations relative to the operation of such vehicle, or vehicles, as public justice may demand. When such permit is issued, no such motor vehicle shall change its route, schedule, fares or tariff, without the permission of the State road commission, or other licensing authority, as the case may be. If such motor vehicle be for the carriage of passengers, it shall be plainly marked, so as to designate the route covered, and shall have posted therein the schedule of fares charged; if such vehicle be for the carriage of freight or merchandise, it shall be appropriately marked with plain letters and figures, showing the load authorized to be carried. The driver of any such vehicle shall, when requested, produce such permit, or a certified copy thereof. The State road commission, or other licensing authority, shall adopt and publish such rules and regulations as may be found necessary to carry out the provisions of this section. Permits, when granted shall be good until the first day of January next following, and may be renewed at their expiration, unless for some good cause the commission, or other licensing authority, shall refuse to reissue the same. Possession of such permit shall not exempt any person, firm or corporation from the payment of registration fees for vehicles as provided herein. Bond to be approved by the commis-

sion conditioned· according to· law shall. be required of
each applicant to whom such permit is granted, in the
sum of not less than five hundred dollars and not more
than five thousand dollars.

"Any person violating any of the provisions of this
section shall be guilty of a misdemeanor, and upon con-
viction thereof, shall be punished with a fine of ·not less
than five dollars, nor more than two hundred dollars
and in addition thereto, such permit may be revoked,
or the license taken away by the commission or other
licensing authority having jurisdiction thereof."

The power of the legislature to so regulate the use of the
public roads, highways, and streets and alleys in incorporated
cities and towns, of· this State is clearly justified as proper
exercise of the police power.

The right of a citizen to travel upon the highway and·
transport his property thereon, in the ordinary course of life
and business, differs radically and obviously from that of one
who makes the highway his place of business and uses it for
private gain, in the running of a stage coach or omnibus.
The former is the usual and ordinary right of a citizen, a
right common to all, while the latter is special, unusual, and
extraordinary. As to the former, the extent of the legisla-
tive power is that of regulation; but as to the latter, its power
is broader. The right may be wholly denied, or it may be
permitted to some and denied to others, because of its extraor-
dinary nature. *Ex parte Dickey,* 76 W. Va., 576, 85 S. E.
781; *Ex parte Cardinal,* 170 Cal. 519, 150 Pac. 348; *Hadfield
v. Lundin,* 98 Wash. 657, 168 Pac. 516; *Dresser v. Wichita,* 96
Kan. 820, 153 Pac. 1194; *Huston v. Des Moines,* 176 Ia. 455,
156 N. W. 883; McQuillin Mun. Corp., Sec. 1620.

The use of the highways for the public transportation of
freight and passengers belongs to the public. This use may
therefore be completely regulated and controlled by the legis-
lature in the interest of the public welfare. *Le Blanc* v. *New
Orleans,* 138 La. 243, 70 So. 212, 139 La. 113, 71 So. 248; *Lutz*
v. *New Orleans,* (D. C.), 235 Fed. 978.

·The purpose of the statute under consideration to afford
the public with suitable service by selected and bonded owners
or operators, is highly commendable.

The right of a licensee operating under such permit is in the nature of a franchise from the State, and therefore an object of injunctive protection.

Courts of equity have jurisdiction by injunction to protect a franchise from unlawful invasion or disturbance, and will exercise such jurisdiction to secure the enjoyment of a franchise privilege or to protect against an invasion of such franchise. 26 C. J. 1047; Joyce on Injunctions, Sec. 534.

Courts have held frequently that a street railway company operating under sanction of law may by bill in equity restrain, within the territory served by it, as a carrier of passengers, the operation of unlicensed "jitneys", engaged in the same business. *United Traction Company* v. *Smith,* 187 N. Y. S. 377; *Memphis Street Ry. Co.* v. *Rapid Transit Co.,* 133 Tenn. 99, 179 S. W. 635; *Memphis Street Ry. Co.* v. *Rapid Transit Co.,* 138 Tenn. 594, 198 S. W. 890; *Puget Sound Traction, Light & Power Co.* v. *Grassmeyer,* 102 Wash. 482, 173 Pac. 504, citing many authorities.

The case here involves similar principle. The defendants are admittedly operating automobile or bus lines for the carriage of passengers for hire in violation and defiance of the statute, to the irreparable injury of plaintiff, legally engaged in such enterprise. We therefore reverse the decree of the circuit court appealed from, reinstate the injunction and remand the cause.

*Reversed; Injunction reinstated, and remanded.*