# CHARLESTON.

PRINCETON POWER COMPANY v. C. R. CALLOWAY et al.

(No. 5347)

Submitted April 28, 1925.   Decided May 12, 1925.

CARRIERS—*Electric Railway Company May Enjoin Owners of Taxicabs from Operating Them Regularly Over Public Road Paralleling Railway and Soliciting Business Along It.*

An electric railway company while in the exercise of its rights and franchise as a carrier of passengers, and adequately serving the public along its line, may enjoin the owners of taxicabs with licenses from the State Road Commission only to operate their cars for hire, from operating them regularly over the public road paralleling the company's line, and from soliciting business over or along the same and in such proximity thereto as to interfere with its business and to cause it irreparable injury, except as may be necessary to travel said road as incident to their business of operating cars for hire.

(Injunctions, 32 C. J. § 369).

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

99 W. Va.

Appeal from Circuit Court, Mercer County.

Separate suits by the Princeton Power Company against C. R. Calloway and others. From a decree dismissing each bill, plaintiff appeals.

*Reversed and rendered.*

*H. E. DeJarnette,* for appellant.

MILLER, JUDGE:

By three separate bills, and upon the same grounds, the plaintiff sought the same injunctive relief against defendants, Calloway, Surber and Sweeney, respectively restraining and inhibiting them and each of them from operating taxi-cabs over the public road between Princeton and Bluefield, in Mercer County, paralleling the plaintiff's traction line between the same points, and to its irreparable injury, and without having obtained from the State Road Commission the certificate of convenience required by the state road law and the rules and regulations lawfully prescribed by said commission.

The circuit court, upon consideration of the several bills, the demurrers of the respective defendants, and their respective answers thereto, and the general replications of plaintiff to said answers, was of opinion that plaintiff was not entitled to the injunctive relief prayed for, and by the decree complained of dismissed each of said bills, with costs to the defendants therein respectively.

The material allegations of the bills, alike in all substantial particulars, are, that plaintiff is a corporation duly organized under the laws of West Virginia, with power and authority under its charter to own and operate an electric line and system between the cities of Princeton and Bluefield, in Mercer County, West Virginia, and in connection therewith to own and operate a street railway system in each of said cities:

That it now owns, and for the past eight years has been and is now engaged, in the business of operating an electric line and railway system between said cities for the transportation of passengers and goods for hire, and proposes to continue so to do under and in obedience to the laws of West Virginia:

That the said railway line begins at a point near the court house in the city of Princeton, and extends in a southern and western direction to a point near the passenger station of the Norfolk & Western Railway in the city of Bluefield. and that its said line for its entire length lies adjacent to the state highway connecting said cities, the distance being approximately twelve miles, and is not separate therefrom more than three hundred yards at any point thereon:

That said road is a state highway, and is under the exclusive jurisdiction and control of the state road commission:

That being so authorized and engaged in the carrying of passengers for hire between said cities and intermediate points, and for that purpose, it has constructed all necessary, suitable and proper tracks, trolleys, roadway, bridges, fixtures and appliances, and has acquired all necessary, proper and suitable cars, fixtures and appliances for the speedy, safe and economical transportation of passengers between said points, upon a schedule, and for the several fares and charges approved by the public service commission, which fares are forty cents for the entire distance, and proportionate charges between intermediate points:

That cars are run each day from each terminus so as to connect with trains leaving these points, and between 6:45 o'clock A. M. and 8:15 P. M. are run from each point on a thirty minute schedule, and thereafter and until 10:00 o'clock P. M. a car leaves each terminus for the other every hour, the last car leaving Bluefield for Princeton at 11:00 o'clock P. M.:

That in addition to this schedule, plaintiff runs a special car each day to connect at Princeton with the Virginian Railway trains from the west arriving at 10:00 o'clock A. M. and 4:00 o'clock P. M., to carry passengers going to Bluefield; and that it stands ready, able and willing at all times to run extra cars when the traffic on its said line may so require it, and that the traffic between said termini does not require the services of the defendants between said points.

And as for further grounds for the injunctive relief sought, it is alleged in the bill against the defendant Calloway, that he has secured from the state road commission what is known and designated in the statute as a taxi license, No. H. 2-010,

the defendant Surber a like license, No. H. 4-139; and the defendant Sweeney a like license, No. H. 3-276; entitling them to operate their respective automobiles for carrying passengers for hire, not over fixed routes and between fixed termini, and in opposition to plaintiff's business; and that defendants have no certificate of convenience from said state road commission to operate their said cars over said highway except as incident to their general taxicab business, but that in derogation of, and in violation of the rules and regulations promulgated by the state road commission, said defendants and each of them are and have been engaged in the business of operating their said automobiles over said state highway between the said cities of Princeton and Bluefield, for the carriage of passengers for hire, and are advertising their said business, and habitually carrying passengers for hire on and over said route, and their purpose to continue therein, and to that end are accustomed to solicit prospective passengers of plaintiff to carry them between said termini and intermediate points; and by this means they are carrying a large number of such passengers, thereby depriving plaintiff of such patronage and business and the compensation therefor, the rate charged by defendants being fifty cents, instead of the forty cents charged by plaintiff for the same service; that if not so carried by defendants such passengers would patronize plaintiff, and that it would receive the compensation therefor; and that the damage thus done to plaintiff by defendants is great and irreparable and indeterminable, and the conduct and practices of defendants constitute an encroachment upon its rights, powers and franchise.

Respondents respectively admit the allegations of the bills, with the following exceptions: They deny that complainant is now furnishing and has heretofore furnished adequate transportation facilities for the carriage of all passengers between said cities, and also deny that its vehicles, cars, fixtures and appliances are fully adequate for said purpose; and allege that the transportation furnished by respondents as set forth in plaintiff's bills is necessary and convenient for the public needs and service.

Respondents specifically admit that their licenses are limited to a taxi business, and that they have no permit or cer-

`tificate authorizing them to operate their cars over the regular route between said fixed termini; and they admit that no other person, firm or corporation has any such certificate or permit entitling them to operate a regular line between said cities for the carriage of passengers; and answer that as the state road commission has not established any regular route over and along said highway, the same is open and free to all persons having licenses to operate taxicabs and other vehicles; they admit that they are and have been engaged as alleged in operating their said automobiles over said highway substantially as alleged in said bills, and allege that it is their purpose to continue to do so, and that they have solicited, and expect to continue to solicit passengers, as they allege they have the right to do under their licenses; that they not only carry passengers and advertise for passengers for hire between the said points, but they say they do not confine their business to carrying passengers over said highway between said cities and the passenger stations thereon, but that they get their passengers anywhere and carry them to any point therein that they may desire to go, which latter service the plaintiff is not prepared to render, and does not do; and that it is not proposed to carry passengers except between said cities as alleged in the said bills.

It is rendered apparent from these recitals of the facts alleged in the pleadings on which the causes were submitted, and on which alone the decree below was pronounced, that plaintiff does not predicate its claim to protection against the acts of defendants on any right or rights granted it by the state road commission to operate bus lines between said cities: it has no such certificate of convenience. The right to the relief it seeks must therefore depend on whether it is entitled in equity to protect its franchise and privileges under its charter from the alleged invasion by defendants, as proposed by its several bills.

It is admitted by defendants that the public highway and the plaintiff's railway between said cities parallel each other for the entire distance, as alleged in the bills; and defendants admit that with permits only to operate their cars for hire otherwise than over fixed routes and between fixed termini,

they have been and are now habitually engaged in operating them for the carriage of passengers for hire and reward over said highway between said cities or termini; and they admit that they have solicited, advertised for and expect to continue to solicit and advertise for passengers as alleged, and as they protest they have the right to do under their licenses to operate their cars for hire, regardless of the effect of their practices upon the business of the plaintiff.

If the plaintiff, instead of operating an electric line, was engaged in operating a bus line over said highway between said termini under a certificate of convenience granted it pursuant to the provisions of section 82 of chapter 6, Acts 1923, amending certain sections of the state road law, there would seem to be no doubt about its right to protect by injunction its business against the unlawful interference therewith by defendants. We so decided in the recent case of *Carson* v. *Woodram,* 95 W. Va. 197, 120 S. E. 512. We there held that the commendable purpose of the statute was to afford the public suitable service by the selection of bonded and licensed owners or operators of such vehicles; that the right of a license to operate under such permit is in the nature of a franchise from the state, and therefore the subject of injunctive process, to secure them in the enjoyment of their rights; citing for this proposition 26 C. J. 1047; and 1 Joyce on Injunctions, § 534. It is further said in the same connection that courts of equity have held frequently that a street railway company operating under sanction of law may, by bill in equity, restrain, within the territory served by it, as a carrier of passengers, the operation of unlicensed jitneys engaged in the same business. For this proposition a large list of authorities are cited. And it was the principle of these cases that we applied in disposing of the case then before the court. The plaintiff in the case now before us holds a license to operate its electric line between said cities as its termini. At great expense it has constructed its line and procured the necessary equipment of cars, and devoted its capital and property to the public use. It has thus placed itself under the power and control of the public service commission, and of the courts, to require of it proper service, and adequate service to the public. Sections 3 to 15, chapter 15-0, Barnes' Code 1923.

The policy of the state as evidenced by the road law and of the statutes relating to the public service commission, its powers and duties, is not to invite or encourage ruinous competition between public carriers; on the contrary its policy is to protect such public servants in the enjoyment of their rights, so that the public may be served most efficiently and economically, and by the best equipment reasonably necessary therein. As illustrative of the application of this power respecting public carriers, see *Chesapeake & Ohio Ry. Co. v. Pub. Ser. Com.*, 75 W. Va. 100; Id. 78 W. Va. 667.

With the burden and duty thus imposed upon a carrier, and the public control thereof established by law, is not the state under the moral, if not the legal obligation, to give reasonable protection, consistent with the public weal, to the rights and franchises of such public service corporations? We think it is. As evidence of the protection which the state intended giving public carriers with permits under the state road law, the Act of 1923, amending the law of 1921, provides that no such permit shall be issued until it shall be established to the satisfaction of the commissioners that the privilege, etc. is necessary or convenient for the public, and that this service, etc. is not being adequately performed by *any other person.* Observe also to what extent the law protects established ferries and toll bridges, and provides against the incursion of unauthorized and ruinous opposition by unlicensed persons. Chapter 44, Barnes' Code 1923. All this is in the public interest; for unless those with licensed authority are so protected in the reasonable exercise of their rights, they can not live to serve the public well and efficiently. They devote their property thus to the public, are subject to public control; and the law should and does give them the right to occupy their particular places in the public service to the exclusion of all unauthorized invaders thereof. Should not these rights be extended to an electric railway. exercising its franchise? We think public policy demands it.

The theory upon which a public utility or private person may thus implead offenders against the law is, that while the public in general are affected, the utility is especially affected and its property rights impaired or destroyed.

*Bryant* v. *Logan,* 56 W. Va. 141; 5 Pom. Equity Jur. § 2017 (§ 584). The wrong done to it is different from that sustained by the public in general, wherefore its special cause of action, and for relief against the wrongful conduct of the offender. The cases cited in *Carson* v. *Woodram, supra,* well illustrate the application of this principle by courts of equity in like cases. And such utilities have been allowed to protect their rights in other ways. In the case of *West Suburban Transp. Co.* v. *Chicago & W. T. Ry. Co.,* (Ill.), 140 N. E. 56, the Chicago & West Towns Railway Company successfully resisted the grant of a certificate of convenience to a motor bus company which applied to the commerce commission for authority to operate busses over certain routes served by the railway company, although the proposed route of the bus company was not identical with the line of the railway company. The fact that it was proposed to serve the same public in substantially the same way was considered sufficient to deny the bus company the right. The public utility statute of Illinois is substantially like the law in West Virginia, relating to the state road commission and the public service commission and their jurisdiction over public utilities. In the case cited, it was held that: "To authorize the Commerce Commission to grant a bus company authority to operate its lines and to serve the same public already served by an existing street railroad system, it must appear that the street railroad company was not rendering adequate and convenient service, and that the operation of the bus lines would eliminate such inadequacy and inconvenience; the convenience and necessity of the public being a primary consideration." In *Memphis Street Railway Company v. Rapid Transit Company,* (Tenn.), L. R. A. 1916-B. 1143; Id. Ann. Cas. 1917-C. 1045, the rights of the parties involved similar statutes and similar facts. The court held that a street railway company having a franchise to operate its cars on particular streets might maintain a bill to enjoin the operation thereon of jitney busses for which the licenses required by law had not been obtained and could not be under existing conditions. In *Davis & Banker, Inc.* v. *Nickell et al.* (Wash.), 218 Pac. 198, the Supreme Court of that state held, that the transportation act requiring certificates

of convenience for the operation of freight and passenger stage lines was to permit the establishment of regular and dependable service, where public necessity and convenience requires; and that an injunction should issue in favor of plaintiffs restraining defendant, with authority to carry freight only, from carrying passengers, though without charge, to the injury of plaintiffs, carriers of passengers for hire. And the same court, in *State ex rel. Seattle & R. V. Ry. Co.* v. *Superior Court for King County et al.,* 212 Pac. 259, and on the same principle, decided that a street railway company might maintain a suit to restrain the operation of motor busses in violation of city ordinances and of the state law, if its business was being interfered with by such operation; and that the remedy provided by the statute for operating busses contrary to law was not exclusive. See also, on the same subject, *Puget Sound Traction, Light & Power Company* v. *Grassmeyer et al.,* (Wash.), 173 Pac. 504. In this case it is said that one specially injured by another's engaging in any form of business in defiance of laws regulating or prohibiting the business, has an action to enjoin such nuisance per se, even though for the wrong committed there is a legal remedy by arrest and punishment. And in that case it was further decided that damage to a street railway by deprivation of fares by the illegal operation of jitney busses was "special damage," within the meaning of the rule permitting injunctive relief to one who unlawfully interferes with the property rights of another, though there was no actual injury to the physical property of the railway.

The defendants, with licenses to operate jitneys only, and who have never obtained certificates of authority to operate motor busses between the fixed termini of the plaintiff, nor given bond or otherwise qualified to serve the public served by plaintiff, nevertheless declare their purpose and right to continue their unlawful practice of running their jitney cars over the public road between said termini, regardless of the rights and obligations of the plaintiff. For this the authorities hold they may be enjoined. Our conclusion is to reverse the decree below, and to enter such decree here as we think the circuit court should have pronounced, enjoining the defendants and each of them, until they shall have acquired

authority and have qualified so to do in the manner provided by law, from operating their motor cars along or over the public road between the cities of Princeton and Bluefield, or any substantial part thereof, except as may be necessary to travel the same as incident to their ordinary taxi business, and from soliciting patrons or business at either of said termini, or at any point along the said road, with the intent of carrying persons or property regularly over said road or substantially the same route.

*Reversed and rendered.*