## OKLAHOMA UTILITIES CO. v. CITY OF HOMINY et al.

### No. 806.

District Court, N. D. Oklahoma.
March 25, 1933.

Miles & O'Brien, of Baltimore, Md., and N. E. McNeill, of Tulsa, Okl., for complainant.

G. K. Sutherland, of Hominy, Okl., Charles Dickerman Williams, of New York City, and James B. McDonough, of Ft. Smith, Ark., for defendants.

FRANKLIN E. KENNAMER, District Judge.

The complainant, Oklahoma Utilities Company, is engaged in the business of distributing and selling electric energy to the city of Hominy, state of Oklahoma, under a franchise granted its predecessor in title on March 2, 1914, by the city of Hominy for a term of twenty years from the date thereof. In its bill filed herein it seeks to enjoin and restrain the defendants, city of Hominy, a municipal corporation, and H. L. McFee, M. J. Graham, M. J. Westbrook, O. W. Fields, T. C. Dandruff, R. C. Drummond, H. C. Carpenter, and R. B. Williams, as members of the city council, and W. R. Brady, as mayor of the city of Hominy, and Melvin E. Acott, as treasurer of the city of Hominy, from interfering with its rights under its franchise by the carrying out of a proposed plan and agreement with Transamerican Construction Company a corporation, for the construction and operation of an electric generating plant and distributing system in the city of Hominy.

The bill recites that the complainant has built and developed an electric generating plant and distributing system in the city of Hominy under its franchise of a value in excess of $100,000; that it has, in good faith, under its franchise furnished electric energy to the city of Hominy and to its citizens since March 12, 1914, and is now so engaged, and that the city of Hominy annually purchases from the complainant electric current for street lighting purposes at an approximate cost of $2,500. The bill further alleges that a certain contract was made between Transamerican Construction Company and the city of Hominy through the duly designated officers of said municipality, and on November 4, 1932, was approved by the city council of Hominy under Ordinance No. 102 subject to

the approval of the qualified taxpaying voters of said city. Under Ordinance No. 102 and the agreement, the Transamerican Construction Company proposed to install and erect for the city an electric generating plant and distributing system at a purported aggregate cost not to exceed the sum of $150,000. The cost to be paid in 84 equal monthly payments of $1,605, each with interest at the rate of 6 per cent. per annum, title to said property to vest and remain in the construction company until the entire purchase price had been paid. The agreement further provided that interest was to begin to accrue sixty days from the date the machinery and material were delivered and accepted and put into use. The first payment was to be made as of that date the machinery was put in use and each subsequent payment to be made on the same day of each succeeding calendar month. The agreement further provided: "The price shall be paid from net revenues of electric light and power plant and distributing system."

To evidence the monthly payments provided in the agreement, the city agreed to execute and deliver to the construction company certain negotiable instruments, termed "pledge orders," which provide, inter alia, that the promise therein to pay "is not a general obligation or liability of the City of Hominy payable or enforceable by taxes or special assessments or from money received by taxes or special assessments," but is a special and limited obligation payable as to both principal and interest from "the net revenues derived from the operation of the electric plant and distributing system."

The agreement further provided that the city should furnish without charge all necessary and suitable right of ways, permits, buildings, cranes, timber, slings, tools, heat, and light which might be necessary in the erection of the plant as well as the operating force and any and all necessary excavating.

The agreement further provided that, in the event any sum due thereunder should remain due and unpaid for sixty days from the due date thereof, the construction company should have the privilege of nominating a superintendent to be employed by the municipality to operate the utility in which the machinery and raw material sold thereunder was used so long as a default continued, or, upon the default continuing for six months, the construction company, at its option, might retake possession of the equipment described in the agreement and could remove the same, and thereupon have the right to sell and dispose of the same to the best advantage, and should account to the municipality therefor in accordance with the laws of the state of Oklahoma, rather relating to conditional sales of personal property.

The bill also alleges that by Ordinance No. 103 the defendants called a special election to be held in the city of Hominy on the 22d day of November, 1932, for the purpose of submitting to the qualified taxpaying voters of said city the proposition set forth in the election proclamation therefor. The proposition sought the approval of the voters of the agreement with Transamerican Construction Company, and, in describing the same, stated that "the Transamerican Construction Company agrees to depend for payment solely upon net revenues of the plant and forever surrenders any right to require payment by taxes or from money received by taxation."

The bill states that, after the passage of Ordinance 102 and Ordinance 103, on November 9, 1932, a resolution was passed by the city council of said municipality and was approved the same day by the mayor of the city instructing the treasurer of the city to purchase upon behalf of the city certain of the "pledge orders" numbered from 61 to 84, inclusive, aggregating $38,520, and to pay for the same when tendered to him at the par value thereof and accrued interest. The resolution further instructed the city treasurer to execute a collateral agreement between the city and the construction company requiring the city to purchase the pledge orders out of certain funds or securities in his hands solely for sinking fund purposes and to pay for the same in the manner indicated. The resolution further required that the treasurer forthwith deposit in escrow with the Exchange National Bank of Tulsa, Okl., the funds or securities in his hands solely for sinking fund purposes to guarantee the faithful performance by the city of its covenants in said collateral agreement.

Under the Ordinance 103 and the election proclamation an election was held on November 22, 1932, and by a majority vote in the election the proposition submitted in the proclamation was accepted.

The bill disclosed that thereafter and on November 25, 1932, the city council of the city of Hominy purported to enact Ordinance 104, whereby the city was authorized "to collect an annual tax in addition to other taxes required by the constitution sufficient

to pay the interest on the indebtedness of the City of Hominy to the Transamerican Construction Company, and to constitute a sinking fund for the payment of the principal thereof within twenty five years," and that the same "is subject to and conditioned upon the unqualified waiver and surrender by the Transamerican Company of any and all rights to enforce the collection of said tax by any means whatsoever."

The defendants filed a motion to dismiss the bill of complaint on the grounds that this court is without jurisdiction of the controversy, and that the bill of complaint does not state facts sufficient to constitute a cause of action to entitle the complainant to the relief prayed or for any other relief.

For the purpose of determining the jurisdiction of this court, the allegations in the bill of complainant must be accepted as true. O'Keefe v. New Orleans (D. C.) 273 F. 560, affirmed in (C. C. A.) 280 F. 92; Wright v. Barnard (D. C.) 233 F. 329.

The unexpired franchise of the complainant herein is property, and any unlawful interference therewith is actionable.

In the case of Bartlesville Electric Light & Power Co. v. Bartlesville Railway Co., 26 Okl. 453, 109 P. 228, 229, 29 L. R. A. (N. S.) 77, the Supreme Court of the state of Oklahoma said: "That an injunction is the appropriate remedy to protect a party who has an exclusive franchise against continuous encroachments is well settled, and such jurisdiction rests upon the ground of its necessity to avoid a ruinous multiplicity of suits and to give adequate protection to one's property in his franchise. 2 Pomeroy's Equitable Remedies, § 583. And the same author states the general doctrine to be that, in order for the owner of a franchise to be entitled to such relief, it is not necessary that the franchise shall be an exclusive franchise in the sense that another similar franchise cannot be granted to other persons, but that, if a defendant who has no franchise is acting in violation of law, he may be restrained by the owner of a valid franchise whose rights are injured by the illegal acts of defendant and that as to the one invading his rights without authority of law the franchise is an exclusive franchise, although the owner would be entitled to no protection against one acting under a similar franchise granted by the proper officers."

The rule announced by the Supreme Court of Oklahoma applies with equal force where a municipality attempts in an unlawful and illegal manner to invade rights granted under a franchise to one in the position of this complainant. In the case of City of Campbell, Mo., et al. v. Arkansas-Missouri Power Co., 55 F.(2d) 560, 562, the Circuit Court of Appeals of the Eighth Circuit held:

"It is urged that, inasmuch as the plaintiff's franchise was not an exclusive one, it had no right to maintain this suit for injunctional relief. The plaintiff, however, had a franchise under which it was entitled to maintain and operate its lighting system in the city of Campbell, and it also had a contract with the city for street lighting. The fact alone that the plaintiff had this franchise would, of course, not prevent the city from erecting and maintaining a municipal light plant, if, in doing so, it did not exceed its power and authority. As the owner of this franchise, however, the plaintiff was entitled to relief against the illegal acts of others who might assume to exercise the privilege who might assume to exercise the privilege conferred upon it by its franchise. A franchise is property, and, as such, is under the protection of the law, and without express words it is exclusive as against all persons acting without legal sanction. True, plaintiff's franchise was not exclusive in the sense that the city might not grant similar right to another, yet it was exclusive against any one who assumed to exercise the privilege granted the plaintiff, in the absence of authority or in defiance of law. Volume 5, Pomeroy's Equity Jurisprudence § 2017; Gallardo v. Porto Rico Ry., Light & Power Co. (C. C. A.) 18 F.(2d) 918; Patterson v. Wollmann, 5 N. D. 608, 67 N. W. 1040, 33 L. R. A. 536; Puget Sound Traction L. & P. Co. v. Grassmeyer, 102 Wash. 482, 173 P. 504, L. R. A. 1918F, 469; Lindsley v. Dallas Consol. Street Ry. Co. (Tex. Civ. App.) 200 S. W. 207; Northern Texas Utilities Co. v. Community Natural Gas Co. (Tex. Civ. App.) 297 S. W. 904; Brooklyn City Ry. Co. v. Whalen, 191 App. Div. 737, 182 N. Y. S. 283, affirmed 229 N. Y. 570, 128 N. E. 215; Farmers' & Merchants' Co-op. Tel. Co. v. Boswell Tel. Co., 187 Ind. 371, 119 N. E. 513; Princeton Power Co. v. Calloway, 99 W. Va. 157, 128 S. E. 89; Citizens' Electric Illum. Co. v. Lackawanna & W. V. P. Co., 255 Pa. 145, 99 A. 462; Lincoln Traction Co. v. Omaha, L. & B. R. Co., 108 Neb. 154, 187 N. W. 790, 28 A. L. R. 960.

"We are clear that the plaintiff, as the holder of this franchise to maintain and operate the plant in defendant city, was entitled to protection against all illegal competition."

See, also, Puget Sound Traction, Light & Power Company v. Grassmeyer, 102 Wash.

852

482, 173 P. 504, L. R. A. 1918F, 469; Lincoln Traction Company v. Omaha, Lincoln & Beatrice Railway Company, 108 Neb. 154, 187 N. W. 790, 28 A. L. R. 960.

We now proceed to a determination of the amount in controversy herein. It is apparent from the allegations of the bill of complaint that the value of the plant, property, and business of the complainant in the enjoyment and use of which it is entitled to protection against unlawful interference is greatly in excess of the statutory limit. For jurisdictional purposes, the test is the value of the plaintiff's right to conduct its business free from the alleged unlawful interference. City of Campbell, Mo., v. Arkansas-Missouri Power Co., supra; Mutual Oil Co. v. Zehrung (D. C.) 11 F.(2d) 887; Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U. S. 121, 36 S. Ct. 30, 60 L. Ed. 174; Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596.

In view of the fact that the complainant, a taxpayer of the city of Hominy and a citizen of Delaware, charges in its bill that the city of Hominy proposes to unlawfully incur indebtedness in a sum exceeding $3,000, the question is presented whether it has or has not the power to incur such indebtedness and thereby vests jurisdiction in this court. City of Ottumwa, Iowa, v. City Water Supply Co. (C. C. A.) 119 F. 315, 59 L. R. A. 604; Johnston v. City of Pittsburg (C. C.) 106 F. 753, and see, also, the notes in decision Auer v. Lombard (72 F. 209) 19 C. C. A. 72.

■ Passing now to a consideration of Ordinance No. 102, the Supreme Court of the state of Oklahoma has held that an agreement to pay for material purchased creates an indebtedness no matter from what source the funds are to be derived from which the payment is to be made. Zachary v. City of Wagoner, 146 Okl. 268, 292 P. 345. It has also been held by the Supreme Court of Oklahoma in the case of City of Sapulpa v. Land, 101 Okl. 22, 223 P. 640, 35 A. L. R. 872, that, where the Constitution of Oklahoma confers the power upon a municipality to do a particular act and prescribes the means and manner of doing such act, such means and manner is exclusive of all others.

Although the agreement contemplated by Ordinance 102 is termed a conditional sales contract, yet under the decisions of the Supreme Court of Oklahoma, construing conditional sales contract of personal property, it must be concluded that in the instant case a purchase was attempted to be made by the city of Hominy of the material in question

from the Transamerican Construction Company. Galbreath v. Mayo, 70 Okl. 252, 174 P. 517.

A determination of the present controversy necessarily involves a consideration of the provisions of the Constitution of Oklahoma, relating to the power of municipalities to incur indebtedness. Section 26, article 10, of the Constitution of Oklahoma, provides: "No county, city, town, township, school district, or other political corporation, or subdivision of the State, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per cent of the valuation of the taxable property therein, to be ascertained from the last assessment for State and county purposes previous to the incurring of such indebtedness: Provided, That any county, city, town, township, school district, or other political corporation, or subdivision of the State, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same."

Section 27 of article 10 of the Constitution of Oklahoma provides: "Any incorporated city or town in this State may, by a majority of the qualified property tax paying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a 'larger amount than that specified in section twenty-six, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city: Provided, That any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall have the power to provide for, and, before or at the time of incurring such indebtedness shall provide for the collection of an annual tax in addition to the other taxes provided for by this Constitution sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within

twenty-five years from the time of contracting the same."

 The city of Hominy attempted to proceed under section 27, of article 10, of the Constitution of Oklahoma, and the above section of the Constitution of the state of Oklahoma is mandatory, and must be strictly construed by this court. City of Sapulpa v. Land, supra; Williams v. Norman, 85 Okl. 230, 205 P. 144; Wilkes County v. Coler, 180 U. S. 506, 21 S. Ct. 458, 45 L. Ed. 642.

Ordinance 102 and the agreement of the city of Hominy with the Transamerican Construction Company created an indebtedness within the meaning of the above section of the Oklahoma Constitution. Under this agreement it is provided that the city of Hominy is not to acquire title to the equipment sold until the contract price is paid. Until that price is paid, Transamerican Construction Company is to be vested with title to said electric generating plant and distributing system. Although a debt is presently created for the purchase of the electric plant and generating system, yet the generating plant and electric system is not to be owned exclusively by the city of Hominy until long after the debt was created. The express provisions of the contract with reference to the retention of title by the Transamerican Construction Company and the provisions of the contract with reference to the power of the Transamerican Construction Company to nominate a superintendent to be employed by the municipality to operate the utility in which the machinery and all materials sold under the contract is used, so long as the default in payment continues, unquestionably show that it was not the purpose to vest in the city of Hominy the exclusive ownership of the electric generating plant and distributing system at the time of the creation of the indebtedness. In view of the strict construction placed upon constitutional provisions with reference to the incurring of debts by municipalities, it would seem that the above constitutional provision intended that the creation of the indebtedness should be concurrent with the acquisition of title to the utility, and, if the acquisition of title were not contemporaneous with the creation of the indebtedness, that the indebtedness was contrary to the constitutional provision. City of Campbell, Mo., et al. v. Arkansas-Missouri Power Co., supra. Under this interpretation of section 27 of article 10 of the Constitution of Oklahoma, it must be concluded that Ordinance No. 102 of the city of Hominy and the agreement with the Transamerican Con-

struction Company are illegal and void. City of Tecumseh, et al. v. Butler, 148 Okl. 151, 298 P. 256; Zachary v. City of Wagoner, 146 Okl. 268, 292 P. 345.

It would necessarily follow that the resolution of November 9, 1932, directing the city treasurer of Hominy to invest certain funds of the sinking fund in the "pledge orders," is likewise illegal and void and an unlawful use of the funds. It is not here necessary to determine whether the "pledge orders," if lawfully issued, could be lawfully purchased by the city with funds from the sinking fund.

It would also follow that Ordinance No. 104 is void because the city of Hominy cannot levy or collect ad valorem taxes for the purpose of collecting revenues to assure the payment of an unlawful indebtedness. In re Town of Afton, 43 Okl. 720, 144 P. 184, L. R. A. 1915D, 978; McQuillan, Municipal Corporation (2d Ed.) vol. 6, § 2364. Furthermore, by the very terms of the ordinance, the revenue to be raised thereby is disclaimed by the Transamerican Construction Company, the only possible beneficiary of such an ordinance, and so there would be no necessity for such a tax. Pitts v. Allen, 138 Okl. 295, 281 P. 126.

The motion to dismiss must therefore be overruled.